## J. ·K. MORRISON, Respondent, *v.* JOHN A. CRAWFORD, Appellant.

Void Attachment—Damages, Mitigation of.—Where goods are seized on a void attachment and are afterwards seized by the same person on a valid attachment and sold in due process of law, and their proceeds applied in payment of the debt of the owner, such application can be shown in mitigation of damages in an action by the owner for the conversion of the goods.

Practice—Bill of Exceptions—Exhibits.—An exhibit attached to a bill of exceptions and referred to therein as a part of the bill of exceptions will be treated as a part thereof.

Appeal from Linn County.

This was an action commenced by the plaintiff against the defendant in the circuit court of Linn county, Oregon, to recover three thousand two hundred and forty-four dollars and fifty cents damages, for wrongfully taking, carrying away and converting a large amount of personal property belonging to the plaintiff, to the defendant's use.

The trial before a jury resulted in a verdict and judgment in favor of the plaintiff for one thousand one hundred and

twenty-six dollars and sixty-nine cents, from which defendant has appealed to this court.

The facts are more fully stated in the opinion.

*Humphrey & Hewett and Bonham & Ramsey*, for appellant.

*Strahan & Burnett and J. J. Whitney*, for respondent.

By the Court, BOISE, J.:

It appears from the pleadings and the facts set forth in the bill of exceptions, that John A. Crawford, as administrator of the estate of Henry Myer, and as administrator of the copartnership property of Myer & Houck, commenced an action against Mathews and Morrison, to recover the sum of eight hundred and fifty dollars and fifty-seven cents, and had an attachment issued and the property in question levied on.

This action, for some irregularity in the proceeding, was dismissed, and the attachment dissolved. Afterwards, on the twenty-fourth day of October, 1877, said Crawford, as administrator, commenced a new action against the same parties for the same debt, and again attached the property without the same having been returned to Morrison.

The property was afterwards sold on an execution issued on a judgment obtained in this last action, and another judgment in favor of Crawford and against Morrison alone. So it appears that the proceeds of the property were applied in payment of debts due from the plaintiff to Crawford. Morrison received the benefit of the proceeds of the goods. The main and only important question in this case is, can one who has levied a void attachment on goods, after such void attachment has been dissolved, seize the same goods on a valid attachment on execution and apply them through such process to the payment of a judgment in his favor, and against the owner of the goods, and then, when the owner brings an action to recover the value of the goods, alleging a wrongful taking and conversion under the void attachment plead in mitigation of damages to such action by the owner, the second attachment and the application of the proceeds of the sale of the goods on due pro-

cess on a judgment obtained under the second attachment?
Before returning to the numerous and conflicting author-
ities on this question, it may be well to look at the situation
of the parties.

In this case it seems that Morrison was liable to Craw-
ford for a sum of money at the time of the levying of the
first attachment, which was due and ought to have been
paid. Crawford, by mistake, either of fact or law, com-
mitted some error in the first proceeding, which made his at-
tachment a nullity and made him a trespasser in taking the
goods. He then became liable to Morrison for a conversion
of the goods, and to pay him their value. Morrison had
his option either to claim the specific property and replevin
the goods, or to insist on a conversion and bring trover or
trespass.

Had he, in this case, proceeded at once and obtained a
judgment for the value of the goods before an execution had
been issued on judgments of Crawford against him, and the
judgment had been on the records of Linn county, in favor
of Morrison against Crawford, for the entire value of the
goods, as well as the judgment in favor of Crawford against
Morrison, the one ought to be set off against the other. In
that case Crawford would have had the benefit of his judg-
ments, as well the parts satisfied by the proceeds of the
goods as that not satisfied, and Crawford could have then
applied the proceeds of the goods to his own use.

The theory contended for by the respondent is, that when
Crawford first had the goods taken on the first void attach-
ment, he converted them and they became his. It is true
that Morrison had the right then to commence an action for
the goods and declare a conversion, or he had a right to fol-
low the specific property and assert the ownership in him-
self; for one is not deprived of the ownership of his property
by a trespass, and until Morrison did elect to consider this
trespass a conversion, he was still the owner of the goods
and could alone transfer the title. Morrison continued the
owner as against Crawford until he elected to claim the con-
version and the value of the goods, and if the goods were
then attached by a creditor of Morrison, other than the tort-

feasor, they could be properly applied to the payment of such debt.

The view of this case, claimed by the respondent, and fully sustained by the New York authorities cited *Lyon* v. *Yates,* 52 Barb. 237; 21 Wend. 396; 28 N. Y. 659; 61 Id. 247, if correct, entirely deprive a party who sues out an attachment, which from some irregularity is dissolved, from ever availing himself of the property so attached, to satisfy his claim, however just that claim may be. He can not return the property to his debtor, for he is not obliged to receive it; and he can not sell it in the market, for he does not own it, until the debtor elects to sue him for a conversion; and he has no other way left but to obtain his judgment against his debtor, and try to set it off against a judgment which his debtor shall obtain against him for a conversion of the property.

In cases of this kind, where an attachment is sued out in good faith, and to secure a debt, the genuineness of which has afterwards been evidenced by a judgment in favor of the attaching creditor, we think the failure of the attachment, for some irregularity in the proceedings by which it was obtained, which is usually the fault of attorneys rather than the creditor, should not subject such attaching creditor to any greater liability or forfeiture than the actual damages which the debtor has suffered. If the property so attached is afterwards taken on execution by such attaching creditor, and applied on the debt to secure which the irregular attachment was issued, and consequently used for the benefit of the debtor, we think it would be proper to plead such application in mitigation of damages to an action afterwards brought by the debtor for a conversion for taking the goods on the void attachment. Such is the rule in effect as declared in many of the states.

In Massachusetts it was held that where a tax collector levied a distress for taxes but did not sell as required by statute, he was a trespasser *ab initio,* but, as the proceeds of the distress were applied in payment of the delinquent's taxes, the rule of damages was the value of the distress deducting the amount applied by the collector to the pay-

ment of the tax. (14 Pick. 356.) So in the state of Connecticut in the case of *Curtis* v. *Ward*, where the rule in New York above referred to is cited and discussed, it is held that where goods are seized on a void attachment, and then afterwards seized by the same person on a valid attachment and sold in due process and applied in payment of the debt of the owner, that such application can be shown in mitigation of damages in an action by the owner for a conversion of the goods. In this case the court says the rule of damages is in case of trover the value of the goods at the time of conversion, with interest. But to this general rule there are certain exceptions as well established as the rule itself. And both the rule and the exceptions proceed upon the same principle that the plaintiff ought to recover as much and no more damages than he has actually sustained. This is also the rule in many other states. (7 Ohio St. 299; 3 Zabrisca, N. J. 342; 16 Vt. 397; 45 N. H. 339.)

There was an objection made on the argument that the Exhibit B, which is a transcript of the judgments on which the proceeds of the sale were applied was not properly a part of the bill of exceptions, it not being incorporated into it, but referred to in the bill as a transcript of said judgments, and marked Exhibit B. It has been the practice to prepare bills of exceptions in this manner, and we do not see that any wrong or inconvenience can arise from it as a matter of practice, and we think the exhibit should be considered and treated as a part of the bill of exceptions.

We think the rejection of the evidence showing the application of the proceeds of the sale of the goods sued for to the payments of the judgments which the defendant had against the plaintiff was erroneous, and a new trial will be granted with costs.