(December 6, 1897.)

## VOLLMER v. SPENCER.

[51 Pac. 609.]

ATTACHMENT—DISSOLVING ATTACHMENT—PRACTICE ON MOTION TO DISSOLVE.—V. sued S. on two causes of action, and procured an attachment. The affidavit for attachment stated that the note upon which the second cause of action was based had not been secured by mortgage, etc. On motion to dissolve the attachment, it was shown that the note sued on in the second cause of action was

secured by mortgage. The trial court dissolved the attachment in toto. *Held,* that the writ of attachment being an entirety, and the affidavit failing to state the facts required by the statute as to the one cause of action, jurisdiction to issue it did not exist, and it was properly dissolved.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

Forney, Smith & Moore, for Appellant.

The court below having dissolved an entire attachment where two separate and distinct causes of attachment are separately and distinctly stated in the affidavit therefor, upon the traverse of one only committed a palpable error. (Drake an Attachment, sec. 101.) And if the defendant leaves one of the causes uncontested, it will sustain the attachment though all the others be nutrue. (1 Wade on Attachments, p. 136, sec. 64; *Keith v. Stetter,* 25 Kan. \*100.) The case at bar is stronger than the Kansas case. There, there were three grounds for one of the causes of attachment, one of the grounds was untraversed, and the holding was as above shown. Here there are two separate and distinct causes of attachment, separately and distinctly stated, predicated on distinct grounds. This point needs no further comment. The error of the lower court is very palpable. A discussion of the second question in this case leads to a careful review of three of the decisions of this court, viz.: *Willman v. Freidman,* 3 Idaho, 734, 35 Pac. 37; *Simmons Hardware Co. v. Alturas Commercial Co.,* 4 Idaho, 334, 39 Pac. 550; *Wooddy v. Jamieson,* 4 Idaho, 448, 40 Pac. 61; *Parberry v. Woodson Sheep Co.,* 18 Mont. 317, 45 Pac. 278.

S. S. Denning and Warren Truitt, for Respondent.

Sections 4321 and 4322 of the Revised Statutes of Idaho make special provisions for testing whether or not the writ has been improperly or irregularly issued, and then in section 4323 it is stated: "If upon such application it satisfactorily appears that the writ of attachment was improperly or irregularly issued, it must be discharged." It cannot be amended because it is jurisdictional and the writ must therefore be

discharged. California has a similar statute, and in *Winters v. Pearson,* 72 Cal. 553, 14 Pac. 304, it is held that an affidavit for attachment cannot be amended. The affidavit not being true in regard to one of the causes of action sued on was void, and could not sustain the attachment as to any part of the sum for which it was issued. Where the affidavit shows the ground of such attachment to be that the debt has not been secured, it is not competent to show by additional affidavits that the claim was originally secured, but such security did not exist at the time of the commencement of the action. The plaintiff who invokes the benefit of the writ must strictly comply with the requirements of the statute. If he includes a debt for which there are grounds of attachment with a debt for which there are none, he does it at his peril. We deem it unnecessary to produce any other authority to sustain this opinion than the able opinion in *Willman v. Freidman,* 3 Idaho, 734, 35 Pac. 37. (*Smith Drug Co. v. Casper Drug Co.,* 5 Wyo. 510, 40 Pac. 213, 979.)

QUARLES, J.—The appellant, as plaintiff, sued the defendant on two separate notes, and filed an affidavit and undertaking for attachment to secure both debts, which attachment issued. Thereafter the respondent served notice of motion, based upon affidavit, to dissolve the attachment, upon the ground that the affidavit for attachment was false, in this: That it stated that the note for $200 (sued on in the second cause of action) had not been secured by any mortgage or lien upon real or personal property, or by any pledge of personal property, when in truth and in fact said promissory note was at the date it was made, executed, and delivered, secured by a chattel mortgage, and which motion was duly made. In support of his motion, the defendant served, and on trial introduced, his affidavit, showing that, on the date of the execution of said note, he executed and delivered to appellant a certain chattel mortgage upon three horses, one wagon° and set of harness, to secure the said note, which mortgage was by the appellant duly filed for record, and recorded in Latah county, where it is still of record and unre-

leased. The motion was heard and sustained, and the attachment dissolved, and from the said order this appeal was taken.

On the trial of the motion, the appellant introduced a counter-affidavit (no other evidence), as follows: "Thomas H. Brewer, being first duly sworn, says: That he is the agent of the plaintiff in the above-entitled action for the purposes of this suit. That he has read the affidavit of E. J. Spencer on motion to dissolve the attachment herein, and, replying thereto, states that affiant is informed and believes from an inspection of a certain duebill, dated February 22, 1893, favor E. J. Spencer, signed by N. F. McCumber, that two of the horses described in the affidavit of the defendant herein were sold by defendant, by and with the consent of plaintiff, on or about the twenty-second day of February, 1893. And affiant further says that he is informed and believes, and so alleges the fact to be, upon his information and belief, that none of the security mentioned in the affidavit of said E. J. Spencer was held as security for the said $200 sued on in this action at the time said action was commenced. And affiant further says that if any part thereof was in existence, that the same had become, long prior to the institution of this action, absolutely worthless, and of no value as security whatever. And affiant further says that the wagon described in the affidavit of E. J. Spencer was, at the time of the taking of the mortgage thereon, an old worn-out wagon, but in fair repair; and that the same was thereafter used in hauling wood over the mountain roads from the home of said E. J. Spencer to Howell's Siding; and that said wagon was long ago rendered absolutely worthless, and that it was not in existence as security at the time of the commencement of this action. And affiant further says that he is informed and believes, and so alleges the fact to be, that the one set of double breeching harness referred to in the affidavit of E. J. Spencer was long ago worn out from use; that the same was old and worn out at the time the mortgage was given thereon; and that, at the time of the commencement of this action, the same did not exist as security on this $200 note. And affiant further says that the remaining horse described in the affidavit of E. J. Spencer—one iron-gray mare, three years old, weight nine hundred pounds—was traded off

by the defendant long prior to the time of the commencement of this action, and that the same did not exist as security for the payment of the said $200 note at the time of the commencement of this action. Wherefore affiant avers that the said $200 was not secured at the time of the commencement of this action, and prays that the said attachment be not dissolved as to the said $200 note. [Signed] Thos. H. Brewer."

From these two affidavits it is manifest that the affidavit for attachment, so far as it relates to the second cause of action, was false, and did not comply with section 4303 of the Revised Statutes. When a mortgage has been given to secure a debt, and the creditor thereafter sues to recover debt, he must, in order to have the benefit of an attachment, state in his affidavit therefor that such mortgage was given, and "that such security has, without any act of the plaintiff," or the person to whom it was given, become valueless. In such case it is not sufficient to say the plaintiff would have been entitled to the attachment if he had stated the facts, and that the defendant was not injured by his failure so to do. The statute requires the facts to be stated, and this requirement cannot be dispensed with, without abrogating a plain provision of a statute, which cannot be done by judicial construction. But the counter-affidavit above set forth shows that the plaintiff had security. It states that the defendant "traded off" one of the horses mortgaged. If this statement is true, such trade did not destroy the lien of the mortgage, and the plaintiff could foreclose against the purchaser. The defendant below having shown that the affidavit for attachment was false as to the second cause of action, the attachment should have been dissolved as to that cause at least. Query: Should it have been dissolved as to both causes of action?

To entitle the plaintiff to an attachment, his debt must be due upon a judgment, or upon contract, express or implied, and one of three other facts must exist, viz.: The debt must have been unsecured by mortgage or lien upon real or personal property or pledge of personal property; or, if such security was given, that it has, without any act of the plaintiff, become valueless; or that the defendant is a nonresident of the state. The statute requires the facts to be stated in the affidavit. In

the case at bar the true condition as to the second cause of action was not stated in the affidavit; hence it was obtained contrary to law, wrongfully, and the plaintiff must not be permitted to reap any benefit from the writ. The plaintiff must know whether his debt is secured or not. He must know whether the security that has been given (if any was given) has become valueless without any act on his part. And he must, whether he makes the affidavit in person or by agent, or by attorney, state the fact as it exists. It is said that all of our statutes must be liberally construed. This rule is enjoined upon us by statute, but it only applies where it is necessary to construe a statute. The statute in this case is plain and unambiguous. It needs no construction. The process of attachment is statutory and purely summary. By it, the debtor is deprived, without a hearing, of the possession of his property. It is the universal rule, so far as we have examined, that the plaintiff must, in order to have the benefit of this statutory process, do everything required by the statute. Under our code, the rule of construction to be applied is this: If there is any uncertainty as to what the statute requires, construe the statute liberally, but the requirements or acts to be performed, when the statute is so construed, must be strictly performed.

The writ of attachment that issued was an entirety. The officer levying it could not separate the amount due on one cause of action from the other by an inspection of the writ itself, and his authority was wholly derived from the writ. No jurisdiction existed to issue the writ as to the second cause of action. The plaintiff could have made and filed affidavit and undertaking on attachment in the cause as to each cause of action, and had separate attachments to secure each. By pursuing this course, one attachment might be dissolved, and the other sustained. The plaintiff had the right to procure one attachment for both causes of action, if the statutory grounds therefor were truly shown to exist. Now, such statutory grounds were truly shown to exist as to one cause of action, and not to the other. The court could not segregate the writ of attachment and the levy made thereunder, so as to leave it in effect as to one cause of action only. The plaintiff, by fail-

ing to comply with our attachment law, brought about this condition—and like one who wrongfully commingles his goods with those of another, so that they cannot be separated with certainty, must suffer the consequences of his own act. To say that we will dissolve this attachment as to one cause of action, and not as to the other, would indirectly permit the plaintiff to have the benefit of it as to both causes of action. The judgment, if rendered in favor of plaintiff for the amount claimed on both causes of action, will be an entirety, as will be any execution thereon. The writ of attachment being an entirety, jurisdiction to issue it as to both of the causes of action must have existed at the time it issued. The court below properly dissolved the writ of attachment. The conclusion reached is fully supported, we think, by the decisions in *Murphy v. Montandon,* 3 Idaho, 325, 35 Am. St. Rep. 279, 29 Pac. 851; *Willman v. Friedman,* 3 Idaho, 734, 35 Pac. 37, and *Fisk v. French,* 114 Cal. 400, 46 Pac. 161. The order appealed from is affirmed. Costs of this appeal awarded to respondent.

Huston, J., concurs.

SULLIVAN, C. J., Dissenting.—I cannot concur in the conclusion reached by my associates. Section 4302 of the Revised Statutes, is as follows: "The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant give security to pay such judgment, as in this chapter provided, in the following cases: 1. In an action, upon a judgment, or upon contract, express or implied, for the direct payment of money, where the contract is not secured by any mortgage or lien upon real or personal property, or any pledge of personal property; or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless; 2. In an action upon a judgment or upon contract, express or implied, against a defendant not residing in this territory." Section 4303 provides that the clerk of the court must issue the writ of attachment upon receiving an affidavit by or on behalf of

the plaintiff, setting forth: that the defendant is indebted to the plaintiff (specifying the amount of such indebtedness over and above all legal setoffs or counterclaims), and whether upon a judgment or upon a contract, for the direct payment of money, and that the payment of the same has not been secured by any mortgage or lien upon real or personal property, or any pledge of personal property, or, if originally secured, that such security has, without any act of the plaintiff or the person to whom the security was given, become valueless.

This suit was brought on two causes of action: 1. On a promissory note dated on September 15, 1892, for $488.98, and upon which it is alleged was due, at the date of making the affidavit, the sum of $973. The affidavit states that the payment of said note was originally secured by mortgage upon chattel property, but that said security has, without any act of the plaintiff, he being the person to whom the security was given, become valueless. 2. On a promissory note dated December 1, 1892, for the sum of $200, which amounted at the date of the affidavit for attachment to $378.90. The affidavit states that the payment of said note has not been secured by any mortgage or lien upon real or personal property, or by any pledge of personal property. The motion to discharge said attachment states the ground therefor as follows: "For the reason that the same was improvidently and improperly issued." No question is raised as to the sufficiency of the affidavit on its face to warrant the issuance of writ of attachment. It shows clearly, under each cause of action, that the plaintiff is entitled to the writ. On its face it is amply sufficient to give jurisdiction for the issuance of the writ. The affidavit in support of said motion is set forth *in haec verba* in the opinion of my associates, and also the affidavit against said motion, and I will not repeat them here. On an inspection of the former, it will be observed that the only ground stated for the discharge of said attachment is that a mortgage was given on personal property to secure the payment of said note at the time it was given, and that it has not been released. The defendant does not claim that said mortgage has any value as security, or that said mortgage was a valuable subsisting security at the date of the issuance of said writ. It

will be observed from an inspection of the counter-affidavit filed on behalf of the plaintiff (made by plaintiff's agent who has had charge of this matter) that, with the consent of plaintiff, two of the horses mentioned in said mortgage were sold by the defendant on the twenty-second day of February, 1893; and, further, that none of the property was held as security for the payment of said $200 promissory note at the time this action was commenced; and that, if any part of the property mentioned in said chattel mortgage was in existence, the same had become long prior to the institution of this action absolutely worthless and of no value as security; and, further, that the wagon and harness mentioned in said mortgage were worn out, and did not exist as security; also, that the three-year-old gray mare mentioned in said mortgage had been "traded off" by the defendant long prior to the commencement of this suit, and did not exist as security for the payment of said $200 note at the commencement of this action; and that said note was not secured at the time this action was commenced. The defendant did not contradict a single statement contained in said last-mentioned affidavit. That affidavit clearly shows that none of the personal property mentioned in said mortgage existed as security for the payment of said $200 at the date of the commencement of this action, but had been sold, traded off, and worn out by the defendant himself. After he had thus deprived the plaintiff of all the property mentioned in said mortgage, and made said mortgage worthless and valueless as security, he comes into a court of equitable jurisdiction, and seeks to deprive the plaintiff of a writ of attachment in aid of his suit to collect the amounts due on said notes, on a mere technicality.

Under subdivision 1, section 4302, of the Revised Statutes, before quoted, a plaintiff is entitled to a writ of attachment in any action upon a contract, express or implied, for the direct payment of money, where the contract is not secured by any mortgage or lien on personal property or any pledge of personal property, or, if originally so secured, such security has, without any act of the plaintiff or the person to whom the security was given, become valueless. Under those provisions, the plaintiff was entitled to the writ. On the hearing of said motion to

discharge the writ, it was shown that said security had become valueless, and without the fault of plaintiff. My associates only state half the truth when, in their opinion, they say that the counter-affidavit shows that the plaintiff had security, and state as follows: "It [the affidavit] states that the deponent 'traded off' one of the horses mortgaged. If this statement is true, such trade did not destroy the lien of the mortgage, and plaintiff could foreclose against the purchaser"—when, as a matter of fact, affiant stated, not only that defendant had traded off said horse long prior to the commencement of this suit, but that said horse did not exist as security for the payment of said $200 at the time this suit was commenced. It may be urged that the last statement is a conclusion of law. Be it so; that is substantially the statement required to be made in the affidavit for the writ, as provided by subdivision 1, section 4303 of the Revised Statutes.

In the opinion of the court it is stated that, on the hearing of this motion, the defendant showed that the affidavit for the writ was false as to the second cause of action. It certainly is not false as to the amount due on said note, for that is not denied, and not false as to the existence of said cause of action; not false as to the fact that plaintiff had a cause of action under said $200 promissory note, and also the right to a writ of attachment under the provisions of said section 4302; false only as to the fact that a mortgage had been given, and as to its being valueless as security. The facts that entitled the plaintiff to a writ existed as to both causes of action. Before the motion to discharge was made, the affidavit for the attachment on its face gave the clerk jurisdiction to issue the writ. The counter-affidavit shows clearly to my mind that said mortgage was valueless as security at the time said writ was issued. Two of the horses had been sold, and the other traded off, by the defendant. The wagon and harness had been worn out by the defendant. And the affiant further states that, if any part of said property was in existence, it had long prior to the institution of this action become absolutely worthless and of no value as security whatever. Under that state of facts, the plaintiff was entitled to the writ.

In the opinion of my associates it is stated that the writ of attachment issued is an entirety, and the officers serving it could not separate the amount due on one cause of action from the other. No doubt about that proposition, but said writ and the officer who served it were subject to the orders of the court. The writ directed the officer to attach and safely keep all the property of the defendant within his county not exempt from execution, or so much thereof as may be sufficient to satisfy plaintiff's demand. The demand in the case at bar was for the sum of $973 on the first cause of action, and on the second the sum of $378.90; total, $1,351.90. No question is raised as to the right of the plaintiff to an attachment in aid of the first cause of action, and, in my opinion, it was within the jurisdiction of the judge or court to direct that the officer release all of the property attached except sufficient to satisfy the plaintiff's first cause of action. And, if the defendant had suffered any damage because of the amount of property attached to satisfy the demands of plaintiff in the second cause of action, he had an ample remedy against the plaintiff and his sureties on the undertaking on attachment. The principle governing the wrongful commingling of goods referred to in the opinion is far-fetched, and by no known rule can it be applied, by analogy or otherwise, to this case; for in the case at bar the court had ample jurisdiction to direct that all of the property be discharged from the levy under said writ, except sufficient to pay the plaintiff's demand in his first cause of action.

Conceding that the writ as to the second cause of action should have been discharged, it should not have been discharged as to the first cause of action. Said writ was not such an "entirety" as to prevent the court from doing justice in the matter. The discharge of said writ, at least as to the first cause of action, was a gross injustice to the plaintiff; and this court has ample jurisdiction to grant a remedy, and it ought to do so. This matter ought to be determined in a manner that justice may be done between the parties, and thus accomplish the objects of our Revised Statutes.

In the case of *Standard Oil Co. v. Alturas Commercial Co.,* 4 Idaho, 334, 39 Pac. 550 (which case was heard with the case of *Simmons Hardware Co. v. Alturas Commercial Co.,* 4

Idaho, 334, 39 Pac. 550), the affidavit for the writ of attachment was attacked upon the ground that it was not subscribed by the affiant. This court held the affidavit sufficient, and said: "Under the weight of authority, and the imperative requirements of section 4 of the Revised Statutes, we feel constrained to hold that the signing of the affidavit was not an indispensable prerequisite to the issuance of the attachment." While one of the requisites of an affidavit is the signature of the affiant, the court held in that case that the omission of the signature would not render the writ void. The signature of the affiant is a part of an affidavit, and under a strict construction of section 4303 of the Revised Statutes, the clerk had no jurisdiction to issue the writ in that case. Under our laws, technicalities should not be permitted to defeat justice.

The cases cited by my associates from this state, as I view them, do not support their decision in this case. The case of *Murphy v. Montandon,* 3 Idaho, 325, 35 Am. St. Rep. 279, 29 Pac. 851, was an action on a bond given to release property from an attachment. The defense interposed was that the writ of attachment was wrongfully issued, for the reason that plaintiff held security for the payment of the debt sued on. In the trial of the attachment case the court found that the attaching creditor held security for the debt for the collection of which the action was brought, and that such finding of fact showed the affidavit to be false; and it was rightly held that it would be a perversion of justice to hold persons responsible on a bond given to release attached property, which attachment had been wrongfully and illegally procured by a false affidavit of the plaintiff. The right of third parties are not involved in the case at bar. In commenting on that case in *Simmons Hardware Co. v. Alturas Commercial Co.,* 4 Idaho, 334, 39 Pac. 550, this court said: "In that case the plaintiff had received and accepted a draft or order, and had not only retained it, but had received partial payments thereof." It was shown that the defendant had valid subsisting security at the time the affidavit for the writ was made, while in the case at bar it was shown that the plaintiff had no security whatever. In the former case the affidavit was false in substance and fact, and in this one only false in form. Supposing, in a case where no

mortgage had been given to secure the payment of a debt, the affidavit for the writ of attachment should state that said debt was secured by a mortgage on personal property, but that said security had become valueless without any act of the plaintiff, would the attachment be discharged upon application therefor on a showing that the statement in such affidavit as to a mortgage having been given was false—that, as a matter of fact, no such mortgage had been given? Would it not be unreasonable and most technical to discharge the attachment in that case, and a flagrant perversion of the clear intent of our attachment law? In the case of *Willman v. Friedman,* 3 Idaho, 734, 35 Pac. 37, the plaintiff sued to enforce the payment of about $4,700, evidenced by certain promissory notes, for $900 each, and two small accounts. The court found that the promissory notes were secured; that the accounts were not; that said small accounts had been assigned to Willman only a few days before said action was brought. The court said: "The affidavit for attachment being untrue, in that it stated that the payment of the debt was not secured by any mortgage, lien or pledge upon real or personal property, its verity is not re-established by the fact that plaintiff had included in his said action two small claims which had been assigned to him but a few days before the commencement of the suit, which claims were unsecured." The affidavit for attachment in that case is very different from the one in the case at bar. In that case the affidavit states that the defendant is indebted to the plaintiff, on promissory notes and open account and for attorney's fees, the sum of $4,661.82, and that the payment of the same was not secured by any mortgage, lien or pledge upon real or personal property. That was a case where the plaintiff had two small unsecured claims assigned to himself, to bolster up and assist in procuring an attachment for a very large sum. The fraud was very transparent. While in the case at bar the affidavit for the writ of attachment was made by an attorney, and there is no indication of fraud or design to overreach the defendant by means of a false affidavit. The statement of the facts would have entitled the plaintiff to the writ. If the case presented any indication of design or fraud in making said affidavit, a very different case would be presented.

Chief Justice Marshall said, in *Ogden v. Saunders,* 12 Wheat. 233: "The positive authority of a decision is coextensive only with the facts on which it is made." The positive authority of the decisions in the cases of *Murphy v. Montandon, supra,* and *Willman v. Friedman, supra,* applies to the facts of those cases, and is not applicable to the facts of the case at bar.

The supreme court of California for a long time followed the rule of strict construction of all statutes in derogation of the common law. In *Fisk v. French,* 114 Cal. 400, 46 Pac. 161, suit was brought to recover on four promissory notes. It appears that the payment of one of the notes had been secured by an assignment of certain mining stock, which assignment was written immediately under the promissory note which was attached as an exhibit to the complaint. The affidavit for the writ of attachment stated that the payment of the sums represented by said promissory notes had not been "secured by any mortgage or lien upon real or personal property, or any pledge of personal property." A motion to discharge the attachment was made on the complaint, affidavit for attachment, and other papers on file in the action, upon the ground that the affidavit for the attachment does not state that the collateral security appearing on the face of the complaint had become valueless without any act of plaintiff. When the motion came on to be heard, the plaintiff, by leave of court, amended his complaint by allegations showing that the mining stock referred to as security had been sold as per stipulation, and the proceeds applied in part payment of said promissory note. The motion to discharge was sustained, from which the appeal was taken. The court, after reciting the facts, said: "The amendment of the complaint did not supply or cure the defects in the affidavit for the attachment, but, on the contrary, incontestably proved that it was false in the material statement that the payment of the notes had not been secured, . . . . and that it was fatally deficient, in that it failed to state that the security had become valueless: It is not shown whether the complaint was verified or not. I think, if it was verified, the papers on which the motion was heard clearly show that the security was valueless at the time the writ of attachment was issued. And, if that fact was shown, it seems to me that the supreme court of that

state are adhering to the rule of strict construction, and allowing technicality to stand in the way of substantial justice. The spirit of our attachment law is to allow the writ when the proper facts exist and are shown; and if the facts are misstated in the affidavit through carelessness or inadvertence, and not through fraud or design, and the affidavit shows that no security exists at the time of issuance of the writ, the writ should not be discharged. The object of the law is to mete out justice, and we are admonished by section 4231 of the Revised Statutes, to, in every stage of an action, disregard any error or defect in the pleadings or proceedings which do not affect the substantial rights of the parties.

The supreme court of California in *Hathaway v. Davis,* 33 Cal. 161, holds that if the complaint does not state facts sufficient to constitute a cause of action, and does not admit of amendment, the attachment should be dissolved; but, if it can be made good by amendment, the plaintiff should be allowed to amend, and the motion to dissolve denied if amendment is made. Under the attachment laws of California, a suit must be brought upon a judgment or upon a contract, express or implied, for the direct payment of money before the writ will issue. Under that law, a complaint is filed that fails to state a cause of action, and in aid of said action an attachment is issued, and it is held on motion to discharge the writ, the complaint may be amended so as to state a cause of action. I submit, would it not be more reasonable and consistent under our law to discharge such attachment than to discharge one in a suit where a cause of action is stated in the complaint, but, through inadvertence, a mistake has been made in the affidavit in stating the true ground for the issuance of the writ. To hold that a writ should not be discharged when the complaint fails to state a cause of action, but that it must be discharged when a mistake in the mere statement of facts in the affidavit for the writ is made, to my mind is most unreasonable and inconsistent. I think the decision in the last-cited case accords with the spirit of our statutes, and I think it more reasonable to hold that there is cause for the discharge of an attachment when the complaint fails to state a cause of action than when a misstatement is inadvertently made in the affidavit, and it is

shown that the facts of the case would warrant the issuance of the attachment. If the undertaking is good, the attachment debtor is amply secured against attachments wrongfully issued. The leading object of our statutes is the furtherance of justice, and a disregard of technical strictness. In commenting upon section 4 of the Political Code of California, the code commissioners said: "The chief design and merit of the code, if it has any, is its attempt to make the attainment of justice the paramount object, and the use of the forms mere auxiliaries, which, when they come in conflict with the ends of justice, are to be relaxed."

The order discharging the attachment ought to be reversed.