Argued April 8, reversed and remanded June 10, petition
for rehearing denied July 22, 1971

# CROUTER, *Appellant, v.* UNITED
# ADJUSTERS, INC., *Respondent.*
### 485 P2d 1208

350

*Gerald R. Pullen* and *Howard R. Hedrick,* Portland, argued the cause for appellant. With them on the brief were Hedrick & Fellows, Portland.

*Alan L. Schneider,* Portland, argued the cause for respondent. With him on the brief were Keane, Haessler, Harper and Pearlman and David W. Harper, Portland.

Before McAllister, Presiding Justice, and Denecke, Holman, Tongue and Howell, Justices.

TONGUE, J.

This is an action for damages for what is alleged to have been a wrongful attachment of plaintiff's

wages. Plaintiff appeals from a judgment for defendant notwithstanding a jury verdict in favor of plaintiff for $376 in special damages, $6,000 in general damages and $10,000 in punitive damages. Plaintiff also appeals from an alternative order for a new trial.

Among the questions presented for decision are questions going to the nature and required elements of an action for damages resulting from a wrongful attachment or garnishment, as well as the sufficiency of the evidence to establish some of such required elements.

Plaintiff, before moving to Portland, had rented a house in Yakima, Washington. He described his landlady as an "eccentric" person who continually came into the house and got into arguments with his wife. He also testified that after three months he moved out, by "mutual agreement" with his landlady, but that she then refused to return a deposit of $75, although he had paid all rent due before leaving.

Several months later defendant received a letter from a corresponding collection agency in Yakima asking defendant to collect $496 from plaintiff, who then lived in Portland, on behalf of his former landlady. Defendant then sent a letter to plaintiff demanding payment of $496. Two days later plaintiff's wife called defendant and said that they "did not owe any money" and had left the house in "good shape."

A week later defendant sent plaintiff another demand letter. Plaintiff and his wife then went to see an attorney who called defendant, asked for copies of the bills claimed to be due and said that plaintiff did not owe anything except perhaps a portion of a telephone bill.

Bills were then sent by defendant to plaintiff's attorney for a telephone bill; $161.20 for labor and

materials to repair a kitchen counter, and $20.80 for repairs to a desk. The attorney then wrote two letters to plaintiff asking for further information, apparently without success, and finally sent a bill for his own services to plaintiff.

After further demand letters, after waiting for over a year without receiving either any payment or any response to such letters, and after calling plaintiff's attorney, who also had received no further information from plaintiff, defendant then filed a complaint against plaintiff for $496 for alleged "rental services rendered." At the same time defendant filed an affidavit for attachment alleging that $496 was due "upon an express contract for the payment of money, to-wit; as set forth in the complaint."[1] The next day plaintiff's employer was served with a notice of garnishment and withheld $105.13 from his wages for payment to the court. Plaintiff's attorney then requested a bill of particulars, which also showed substantially the same "breakdown" of the claim as shown by the bills previously delivered to plaintiff's attorney. Plaintiff then filed an answer denying any indebtedness except $64.63 for telephone charges to be offset against the $75 deposit.

Before filing the complaint and affidavit for attachment defendant knew that part of the claim was for rent and telephone bills and that part was for claimed damage to the kitchen counter and desk. Defendant's president testified, however, that he had been told by the Yakima correspondent that it was a good and valid claim and that although it was his

---

[1] This was prior to the decision in Sniadach v. Family Finance Corp., 395 US 337, 89 S Ct 1820, 23 L ed 2d. 349 (1969), barring the attachment of wages upon the filing of a complaint and without notice and hearing.

understanding that a claim for an attachment could not be made on a tort claim, it was also his understanding that failure to redeliver rented premises in good condition was subject to attachment (as a breach of contract).

Plaintiff offered testimony that the complaint filed by defendant against plaintiff was prepared in defendant's office by a secretary and then signed by defendant's attorney, who did not then know that it was an out-of-state claim or that part of the claim was for property damage and would not have signed it if he had known of such facts. Plaintiff also offered testimony that defendant filed a much higher percentage of attachments than other collection agencies and had been warned by its attorney about filing attachments on out-of-state claims because of difficulty in getting testimony from out-of-state witnesses. Defendant also encountered difficulty in securing the presence of the landlady to testify and, as a result, asked that the trial date be postponed. That request was granted, but on condition that the attachment of plaintiff's wages be released, which was then done.

That case later came to trial and resulted in a jury verdict and judgment in favor of Mr. Crouter (the plaintiff in this case, but defendant in that case). An appeal was then taken from the district court to the circuit court, but was dismissed. A further appeal was also taken to this court, but was also dismissed.

Plaintiff testified that the garnishment of his wages by defendant was the second such garnishment; that he was then "struggling along," but that after that garnishment he did not have sufficient funds to pay other creditors and later had two more garnishments. Although regarded by his employer as a good

employee, except for financial worries, he was then discharged (over a year and one-half after defendant's garnishment) because of a policy by his employer to discharge employees after four wage garnishments.

At that time plaintiff was "grossing" approximately $600 per month, not including $200 to $250 per month from week end work as a musician. He also testified that after defendant's attachment he tried to get an extension of credit from a finance company, but was refused. This was shortly after defendant had called the finance company to inquire about plaintiff, at which time defendant told the finance company that plaintiff owed the Yakima bills. Some months later, however, plaintiff's credit was renewed by the finance company, apparently to protect itself, but based also upon some apparent improvement in his credit rating at that time. Meanwhile, plaintiff had "panicked" and had assigned his wages to "Debt Reducers" to pay some of his bills.

After being discharged from his job, plaintiff went to work full time as a musician and by 1969 was again "grossing" about $600 per month, but with perhaps heavier travel and other expenses. The testimony of his earnings during 1967 and 1968 was quite indefinite. During that period, however, he also had trouble with other creditors, including support payments for children by a previous marriage and served ten days in jail for contempt of court for failure to make such payments.

The testimony to support plaintiff's claims of $368.40 for special damages for expenses incurred in releasing the attachment was also indefinite. $352.40 of that amount was for attorney fees, to cover plaintiff's visits to his attorney and his work to "set up the defense," not including the "actual trial."

1. *Both want of probable cause and malice must be
   proved in an action for damages resulting from a
   wrongful attachment of a debtor's property.*

The principal problem in this case arises from
plaintiff's contention that this is an action for wrong-
ful attachment and that in such an action the plaintiff
is not required to prove either malice or want of
probable cause. This contention is denied by defend-
ant, which contends that there is no separate action
for wrongful attachment, but that the remedies for a
wrongful attachment are limited to (1) an action on
the attachment bond, (2) an action for abuse of pro-
cess, and (3) an action for malicious prosecution, in
which malice and want of probable cause must both
be proved.[2]

Plaintiff relies primarily upon our previous de-
cision in *Mills v. Liquidators,* 206 Or 212, 288 P2d 1060
(1956), in which we said (at p 217):

> "An action for wrongful attachment is in the
> nature of an action in trespass for conversion of
> personal property; 'malice and want of probable
> cause are not essential elements of an action for
> damages for wrongful garnishment, * * *'."

Indeed, plaintiff's counsel frankly stated on argument
that he must "stand or fall" on that case.[3]

---

[2] In support of this contention defendant cites, among other
cases: Mitchell v. Silver Lake Lodge, 29 Or 294, 45 P 798 (1896);
McKinney v. Nayberger, 138 Or 203, 295 P 474, 2 P2d 1111, 6
P2d 228 (1931); Alvarez v. Retail Credit Association, 234 Or 255,
381 P2d 499 (1963); and Carlson v. Schroeder, 164 Neb 443, 82
NW2d 416 (1957).

[3] Plaintiff also relies upon Morrison v. Crawford, 7 Or 472, in
which it was held (at p 474):

> "In this case it seems that Morrison was liable to Crawford
> for a sum of money at the time of the levying of the first at-

Admittedly, the law on this subject in Oregon is in a state of confusion and plaintiff was justified in his reliance on *Mills*. In that case, however, the wrongful attachment was not made upon property of the debtor, but upon property belonging to a third person —the plaintiff in that case. Although it does not appear from the opinion in that case, it appears upon reading the briefs submitted by counsel that plaintiff in *Mills* was relying upon authorities to the effect that when an attachment is levied *"upon property which does not belong to the party sued,"* the remedy of conversion was available in such a case, citing 91 ALR 922 (at pp 934-6), and *Sabin v. Chrisman,* 90 Or 85, 175 P 622 (1918), in which the remedy of conversion had been recognized in such a case (at p 88).[4]

In *Mitchell v. Silver Lake Lodge,* 29 Or 294, 45 P 798 (1896), plaintiff's complaint alleged that an attachment of his property by defendant was wrongful and without probable cause, but did not allege malice. This court reversed a judgment for plaintiff, holding (at p 304) that in an action for damages resulting from a wrongful attachment "it was necessary to allege and

tachment, which was due and ought to have been paid. Crawford, by mistake, either of fact or law, committed some error in the first proceeding, which made his attachment a nullity and made him a trespasser in taking the goods. He then became liable to Morrison for a conversion of the goods, and to pay him their value. Morrison had his option either to claim the specific property and replevin the goods, or to insist on a conversion and bring trover or trespass."

[4] In Morrison v. Crawford, *supra* note 3, however, the attachment was not made upon property of the wrong person, but apparently had been dissolved as a void attachment. Thus, the appropriateness of the remedy of conversion in such a case was apparently not in issue, but only the right of the defendant to mitigation of damages or setoff as the result of a subsequent valid attachment.

prove that the attachment was malicious." In arriving at that result the court discussed at length the authorities on this subject and held (at pp 300-1) that in the absence of statute, "malice and want of probable cause are the gist of the action to recover damages for the wrongful attachment of property."

Perhaps the principal reason for the adoption of such a rule in *Mitchell* appears from the following statement by this court in that case (at pp 296-7):

> "Courts are ever open to litigants for the adjudication of their rights, and, although a party may have been induced by malice to institute an action, so long as he does not cause the arrest of the defendant, or his property to be attached, the costs awarded upon the dismissal of the proceedings are deemed by the legislative assembly suitable compensation for the injury suffered by the defendant in consequence of the action, and the law affords him no other remedy. * * * If, however, the defendant has been arrested or his property attached in an action which terminates in his favor, he has sustained a special injury, which cannot be compensated by the costs and disbursements prescribed by statute, and, if such action were instituted through malice, and prosecuted without probable cause, upon the common-law theory that wherever there is an injury there is also a remedy, the defendant may maintain an action of malicious prosecution to recover the damages sustained."

This court subsequently approved its prior decision in *Mitchell* in *McKinney v. Nayberger,* 138 Or 203, 209, 2 P2d 1111, 6 P2d 228, 229 (1931), and *Carnation Lbr. Co. v. McKenney,* 224 Or 541, 544, 356 P2d 932 (1960), although *Mitchell* was held not applicable to those cases, which did not involve wrongful attachments. Apparently, however, *Mitchell* was not called to the attention of the court in *Mills,* although that

case involved attachment of property which did not belong to the party sued (the debtor), as previously pointed out.

In *Alvarez v. Retail Credit Ass'n,* 234 Or 255, 381 P2d 499 (1963), defendant, a collection agency, had levied execution on plaintiff's wages under a default judgment for a bill which plaintiff had denied that he owed. After that action had been dismissed and the money returned to plaintiff, he filed an action for malicious prosecution against the collection agency, alleging malice and demanding both actual and punitive damages. This court reversed a jury verdict and judgment of $1,152.45 for the plaintiff on the ground that malice had not been proved. In so holding, this court said (at p 262):

> "Equal in importance to a plaintiff's proof of a want of probable cause in a case of this character is the necessity that he prove malice on the part of the defendant * * *."

The court did not, however, discuss the question whether an action for "wrongful attachment" was an independent remedy in which neither malice nor probable cause are "essential elements." No such contention was made by the plaintiff in *Alvarez* and the *Mills* case was not cited to the court.

1. After reviewing our prior decisions on this subject and after also considering the law in other jurisdictions, we reaffirm what we previously held in *Mitchell* and *Alvarez* to the effect that in an action for damages against a creditor resulting from a wrongful attachment of a debtor's property, both want of probable cause and malice must be pleaded and proved.[9]

---

[9] We do not decide, however, whether or not these same elements are required in an action upon an attachment bond or in an action for abuse of process.

We also hold that these elements are required in such an action whether an action for wrongful attachment be regarded as an independent common law action or as a common law action for malicious prosecution.[6]

It follows that since the first cause of action as pleaded in plaintiff's third amended complaint makes no attempt to allege either want of probable cause or malice, plaintiff is not entitled to recovery under that cause of action.

2. Plaintiff's second cause of action, however, is claimed to allege a cause of action for malicious prosecution and alleges both that the attachment was levied without probable cause and that defendant's conduct was malicious. Thus, contrary to defendant's contentions, we also hold that plaintiff's second cause of action sufficiently alleged a want of probable cause. *Drake v. Anderson,* 215 Or 291, 295, 334 P2d 477 (1959), leaving for consideration defendant's further contention that the evidence of lack of probable cause and malice was not sufficient to take the case to the jury.

2. *Plaintiff offered sufficient evidence of want of probable cause and malice.*

3. On the issue of probable cause, plaintiff offered testimony that although defendant knew that $182 of the $496 claim was for damage to the kitchen counter and to a desk in the rented house it nevertheless prepared and filed the affidavit of attachment for the entire $496 as due "upon an express contract for the payment of money, to-wit; as set forth in the complaint" and that the complaint alleged that $496 was payable for "rental services rendered."

---

[6] See Carlson v. Schroeder, 164 Neb 443, 82 NW2d 416, 418 (1957).

Defendant's president admitted that he knew that an attachment was not proper on a tort claim for damages, but stated that he considered a claim for failure to deliver rented premises in good condition to be a claim in contract, rather than tort, and thus properly subject to attachment.

ORS 29.110 (1)(a) authorizes attachments for

"An action upon a contract, expressed or implied, for the direct payment of money, * * *."

Defendant contends that there is an implied covenant in every lease that the tenant will return the premises unharmed and that ORS 29.110 (1)(a), by its terms, permits attachments for breach of implied contract. The question remains, however, whether such a claim is for "the direct payment of money," within the meaning of ORS 29.110.

In *Ruby v. Whitten*, 117 Or 271, 243 P 559 (1926), we held that attachment will not lie under the provisions of this statute for damages claimed for breach of a lease covenant requiring defendant to return the premises in good condition, based upon the law as "settled" by *Neilson v. Title Guaranty & Surety Co.*, 101 Or 262, 199 P 948 (1921). In *Neilson*, although not involving a lease covenant, it was held (at p 274) that attachment is only proper to recover upon "an actual and bona fide debt" and that a "debt" must be liquidated in amount. In *State ex rel Bethke v. Bain*, 193 Or 688, 240 P2d 958 (1952), the most recent of the cases cited by defendant in support of its contention that attachments will lie on implied contracts, the claim involved was not for failure of a tenant to return premises in good condition and this court specifically noted (at p 701) that "In the instant case no uncertainty exists as to the amount of money plaintiff

paid on the purchase price and which he is entitled to return upon rescission."[7]

It follows, under the undisputed evidence and as a matter of law,[8] that since a substantial portion of defendant's claim was for damages to the premises, an unliquidated claim, defendant did not have probable cause for the issuance of the attachment in the total sum of $496.

Defendant also contends that since the amount actually attached (the sum of $105.43) was less than the amount of that portion of the claim which was properly subject to attachment (the sum of $314), the attachment is not invalid because it "joined" an additional claim for damages that was not subject to attachment. In support of that contention defendant cites cases holding that the joinder in a complaint of a cause of action upon which an attachment will lie with a cause of action upon which an attachment will not lie will not invalidate an attachment issued for the amount claimed under the first cause of action. See *Stotland v. Mobile Homes Engineering Corp.*, 197 Cal App 2d 815, 17 Cal Rptr 591, 594 (DC App 1962). See also *Samuels v. Superior Court of Los Angeles County*, 276 Cal App 2d 264, 81 Cal Rptr 216 (CA 1969), and *Bradford v. Eden*, 47 Misc 2d 482, 262 NYS2d 788 (Sup Ct App Div 1965).

4. But where, as in this case, the affidavit of attachment stated a single claim for an amount which, in fact, consisted in part of a claim for damages not

---

[7] Similarly, Suksdorff v. Bigham, 13 Or 369, 12 P 818 (1886), the principal case relied on by defendant on this point, the attachment was for recovery of a converted bank deposit, which was also liquidated in amount.

[8] Cf. Timmins v. Hale, 122 Or 24, 37–38, 256 P 770 (1927), and Alvarez v. Retail Credit Association, *supra* note 2, (at 261).

subject to attachment, such an attachment is completely invalid. *Allen v. Merchants Electric Company,* 54 Cal 2d 67, 351 P2d 799, 802 (Cal Sup Ct 1960); *National Reefer Service v. Felman,* 164 Neb 783, 83 NW2d 547, 549 (1957); *Cecrle v. W. H. Jeffries,* 12 Ohio Misc 25, 229 NE2d 477, 479-80 (1967); *Vollmer v. Spencer,* 5 Idaho 557, 51 P 609, 610 (1897). See also *Haroco Co., Inc. v. Sahim,* 105 NYS2d 977 (Sup Ct 1951), and *Republic of Italy v. DeAngelis,* 111 F Supp 216, 220 (SDNY 1953).

Although this court has not previously decided this question, we adopt the rule as stated in these cases as consistent with the established policy of this court that strict compliance with the attachment statutes must be pleaded and proved. *Banker's Discount Corp. v. Noe,* 116 Or 570, 577, 242 P 610 (1926). Accordingly, we hold that not only did defendant have no probable cause for issuance of the attachment, but that the attachment was invalid.

5. It does not follow, however, that the lack of probable cause was *of itself* sufficient evidence from which the jury could properly infer that defendant acted with malice in the attachment of plaintiff's wages. *Alvarez v. Retail Credit Association, supra,* (at 264). Nevertheless, as stated in *Alvarez* (at p 264):

"* * * What the courts have said, however, is that the law will permit the jury to draw an inference of malice in most cases where a want of probable cause is found."

See also Prosser, Torts (3d ed) 868, § 113, and 1 Harper and James, The Law of Torts 321-322, § 4.6, and cases cited therein.

In *Alvarez* we also said (at p 266) that in an action for malicious prosecution in the bringing of a

civil action, plaintiff must prove not only that he was wrongfully sued, "but that the defendant in bringing the action had a motive other than that of securing an adjudication of the claim on which the action was based," although recognizing (at p 265) that:

"Had there been in the case before us some evidence of wanton or reckless failure to exercise any care in learning the facts, or evidence of some oppressive and flagrant disregard for the rights of Alvarez, there might have been some justification for submitting the issue of malice to the jury. * * *."

6. In this case, there was evidence on the issue of malice in addition to the fact that defendant knew that a substantial part of the claim was for damages to the rented premises and had not probable cause for issuance of the attachment for $496. Thus, there was evidence that the complaint and affidavit for attachment in this case were prepared by a secretary in defendant's office and were then signed by defendant's attorney in a perfunctory manner, without any reliable knowledge of the facts, and that if he had known the facts he would not have approved these documents. These documents included an affidavit that the entire $496 was owed under an "express contract for the payment of money," which was not true, and a complaint alleging that the $496 was for "rental services rendered," which was a statement of dubious veracity, to say the least. In fairness to present counsel, it should be noted that the attorneys who represented defendant in the attachment proceedings were not the same as those who represent defendant in this case.

We hold that from the evidence in this case the jury could have properly found that defendant was guilty of "wanton or reckless failure to exercise any care in learning the facts," as well as an "oppressive

and flagrant disregard" for the rights of Mr. Crouter. We also hold that from the evidence in this case the jury could have properly found, on the issue of defendant's "motives," that in issuing the attachment in this case, particularly for the sum of $496, defendant was more interested in coercing plaintiff into paying that full amount than in securing a proper adjudication of the claim on which the attachment was based. Accordingly, we hold that there was sufficient evidence of "malice" to take that issue to the jury in this case.

3. *Plaintiff's claim of general, special and punitive damages.*

In *Carnation Lbr. Co. v. McKenney,* 224 Or 541, 356 P2d 932 (1960), also an action for malicious prosecution, this court reaffirmed the rule that exemplary or punitive damages are not recoverable in the absence of proof of actual damages and held that this rule is also applicable in an action for malicious prosecution, contrary to the rule in some jurisdictions.[9]

Indeed, the effect of that decision was to adopt (at p 545) the rule of those jurisdictions which hold that there can be no recovery in an action for malicious prosecution in the absence of either some special damage to a defendant or some interference with his person or property.

Later, in *Alvarez v. Retail Credit Association,* *supra* (at 259), we also distinguished that case on this question by pointing out that:

"* * * In due course, execution was levied upon Alvarez' wages. The case at bar is thus taken out

[9] See Prosser on Torts (3d ed) 868, § 113, and 1 Harper and James, The Law of Torts 326, § 4.8 and 3 Restatement of Torts § 675.

of the rule in Oregon that no action will lie for bringing civil litigation that is merely vexatious, in the absence of a showing of actual damages, e.g., attachment or the like. *Carnation Lbr. Co. v. McKenney et al,* 224 Or 541, 356 P2d 932 (1960)."

7. The effect of such a rule is that when there has been interference with the property of a plaintiff by a wrongful attachment, and the other elements of an action for malicious prosecution have been proved, plaintiff is entitled to have his case submitted to the jury for an award of punitive damages without pleading or proof of special damages for the reason that the law assumes that some actual damage necessarily follows from an attachment of plaintiff's property.[10]

8. In this case, of course, there was such an interference with the property of the plaintiff by wrongful attachment of $105.13 in wages, resulting at the least in his loss of use of that amount for a period of seven months until the attachment was dissolved. Thus, since there was also sufficient evidence of lack of probable cause and malice, plaintiff was entitled to have the case submitted to the jury, under proper instructions, on the issue of what, if any, punitive damages should be awarded.[11]

It does not follow, however, under the evidence in this case that plaintiff was also entitled to have submitted to the jury his claims for $376.40 in special damages and $15,000 for general damages.

9. Of the claim of $376.40 for special damages,

[10] Cf. Balsiger v. American Steel & Supply Co., 254 Or 204, 207, 451 P2d 868, 458 P2d 932 (1969). See also Prosser, *supra* note 9, 868.

[11] For the necessary elements to be proved in an action for malicious prosecution involving a wrongful attachment, see Alvarez v. Retail Credit Association, *supra* note 2, (at 259).

$352.40 was claimed for payment of attorney fees. It is well established that in such an action the plaintiff may only recover those attorney fees incurred in securing a release of the attachment, not including attorney fees for defending the case on its merits. *McInnis v. Atlantic Investment Corp.*, 137 Or 648, 654, 3 P2d 118, 4 P2d 314 (1931). In this case, however, there was no evidence that the services of the attorney included in the bill of $352.40 for attorney fees were for any work involved in securing a release of the attachment. On the contrary, the testimony was subject to the inference that such services included preparation for defense of the case on its merits. The same is true of plaintiff's claim of $24 in lost wages as the result of taking time off to consult with his attorney in preparing to defend the case on its merits. See cases cited in 7 CJS Attachment § 559. In addition, of course, the attachment was not released as the result of any efforts by plaintiff or his attorney, but was released by defendant as a condition for securing a postponement of the trial.

10. Plaintiff's next claim, for $15,000 in general damages, includes claims for alleged injury to credit reputation and general reputation and termination of employment. Plaintiff's evidence in support of his claim of injury to his credit reputation and general reputation was clearly insufficient. Only six months before this attachment plaintiff's wages had been garnished by another collection agency. Also, his credit had been rated at the time of this second attachment as only "poor" to "good" by the loan company with which he did business and did not subsequently fall to any substantially lower rating. He had also twice previously been required to appear in court for nonpayment of child support obligations.

The fact that the loan company later declined to renew a loan following a telephone call from defendant was not shown to have been the result of the attachment or claim by defendant and it subsequently renewed other loans for plaintiff. Neither is the fact that plaintiff's paying habits may have "deteriorated" any evidence that his reputation was damaged by the attachment. Thus, in the absence of other testimony, there was no evidence of any substantial damage to either plaintiff's credit reputation or his general reputation.

Finally, on this issue, plaintiff's evidence was also insufficient to prove that the termination of his employment and the "elimination" of his opportunities for advancement were caused by defendant's attachment of his wages. He was not discharged for more than a year and one-half after defendant's attachment of his wages and after two subsequent wage garnishments. Also, while it is true that his employer had a general policy of discharging employees after four wage garnishments, the decision to terminate any particular employee was "discretionary" and plaintiff's employment record showed that he was discharged because of his inability "to perform work satisfactorily because of constant financial obligations, garnishments, etc." During the interval between defendant's attachment and plaintiff's discharge he was also brought into court twice more on charges of nonsupport and spent ten days in jail for contempt of court.

Under these facts we hold that while the attachment of plaintiff's wages in October 1966 may have contributed to a deterioration in plaintiff's "paying habits," as he contends on this appeal, it was too remote, both in point of time and otherwise, to be prop-

erly regarded as the cause of his subsequent discharge from his employment in May 1968, much less the cause of the "elimination" of his opportunities for subsequent advancement.

It follows that under the record in this case plaintiff was not entitled to have his claims of either special or general damages submitted to the jury. For reasons previously stated, however, we hold that because of the wrongful attachment of his wages plaintiff was entitled to have his claim to punitive damages submitted to the jury.[22]

4. *Defendant is entitled to a new trial because of errors recognized in the order granting a new trial.*

Plaintiff also contends that the trial court erred in its alternative order for a new trial, which was entered because the trial court held that it had erred in not withdrawing from the jury plaintiff's claim of general damages for alleged termination of employment and "elimination" of his opportunities for advancement and also in instructing the jury, in effect, that when there has been an attachment which was proper in itself, but the ultimate verdict on the merits of the case has been against the party obtaining the attachment, such an attachment must then be considered as having been wrongful as a matter of law.

For reasons previously stated, the trial court erred in not withdrawing from the jury plaintiff's claim of damages for alleged termination of employ-

---

[22] We have not overlooked other contentions by defendant in support of its motion for entry of a judgment for defendant, notwithstanding the jury verdict for plaintiff. After considering them, however, we find that they do not have sufficient merit to justify the prolonging of an opinion that may already be too long.

ment and "elimination" of opportunities for advancement.[8]

Similarly, for the reason (as previously stated) that want of probable cause for the attachment is a necessary element in such an action, it also follows that the trial court erred in giving an instruction which had the effect of eliminating any such requirement.[9]

For all of these reasons, we hold that the trial court did not err in its alternative order for a new trial, but that it was error for the trial court to enter judgment for defendant and against plaintiff.[10]

Reversed and remanded for new trial.

HOLMAN, J., dissenting.

The majority opinion states that

"It follows, under the undisputed evidence and as a matter of law, that since a substantial portion of defendant's claim was for damages to the premises, an unliquidated claim, defendant did not have probable cause for the issuance of the attachment in the total sum of $496."

I will grant that there was not probable cause for the issuance of an attachment in the total sum of

---

[8] Plaintiff also assigns as error the striking by the trial court of plaintiff's allegations of general damages for injury to credit reputation and general reputation. For the same reasons, as previously stated, the trial court did not err in striking these allegations.

[9] Plaintiff cites Olson v. National Grocery Co., 15 Wash 2d 164, 130 P2d 78 (1942), as holding that such an instruction is proper. Under the law of Oregon, however, beginning with Mitchell v. Silver Lake Lodge, *supra* note 2, and as more recently held in Alvarez v. Retail Credit Association, *supra* note 2, such an instruction would be improper for the reasons stated in this opinion in discussing those and other Oregon cases.

[10] Defendant also complains of other rulings by the trial court. In view of the basis for decision in this case, however, and since no cross-appeal was taken by defendant, it is not necessary to consider such matters.

$496. However, included within the total claim was a claim for $314 for which there was probable cause to issue an attachment and which was sufficient to cover the sum of $105.13 which was attached. Had the $182 been left out, for which no probable cause existed to issue an attachment, the $105.13 would nevertheless have been attached. Therefore, the malicious inclusion in the affidavit of the $182 claim did not result in the attachment of plaintiff's money and, thus, did not cause his damages.

The only basis for holding that defendant should be responsible in damages is that the protection of the public from wrongful attachments requires the attachment statutes to be construed so strictly that, upon the inclusion of an item for which there is no probable cause, not only is the attachment held invalid, but damage is presumed regardless of whether such inclusion can be shown to have caused any actual harm. This flies in the face of the almost universally recognized rule that in malicious prosecution cases arising out of civil proceedings, it is necessary to show that actual damages are caused. Prosser, *Torts* 875, § 114 (3d ed 1964). The majority opinion has illustrated that the only actual damage which plaintiff suffered was the loss of the use of the attached sum of $105.13. The attachment of this amount did not result from the inclusion of the improper additional amount in the affidavit. As stated before, had it been left out, the result would have been the same.

I would affirm the judgment of the trial court.