[No. 537.  Decided January 31, 1889.

DAVID MARSH v. F. M. WADE.

CHATTEL MORTGAGES — REQUISITES — RIGHTS OF MORTGAGEE IN POSSESSION — EVIDENCE — BEST AND SECONDARY.

A chattel mortgage is valid without words purporting to grant, sell, convey, etc.; the word " mortgage " includes all these.

In an action of replevin by a mortgagee to recover the mortgaged property which had been attached while in his possession by creditors of the mortgagor, it was error for the court, after excluding the mortgage by reason of invalidity, to treat the transaction brought about by the mortgage as a pledge, and admit oral testimony to establish the relation of pledgeor and pledgee.

A mortgagee in possession of the mortgaged property, the mortgage being valid between the parties, and made in good faith, has the right of possession against all the world, and he cannot be deprived of that possession until the debt for which the mortgage is executed has been satisfied.

*Error to District Court, Whitman County.*

Replevin brought by F. M. Wade against David Marsh to recover possession of a stock of goods.  Judgment for plaintiff, and defendant brings error.

*Doolittle & Pritchard,* and *Cox, Smith & Teal,* for plaintiff in error.

*Sullivan, Wolford & Sullivan,* and *Allen & Crowley,* for defendant in error.

The opinion of the court was delivered by

NASH, J. — This was an action of replevin brought by the defendant in error in the court below to recover pos-

session of a stock of goods.    He alleges in his complaint that he has a special property in said goods by virtue of a chattel mortgage from one J. L. Heatherly, given to secure certain notes which were held by the defendant in error as agent of the owners, and which he was authorized to secure; that, by the terms of said mortgage, the defendant in error was authorized to, and, in pursuance thereof, did, take immediate and exclusive possession of said goods; and that afterwards the plaintiff in error wrongfully took said goods from his possession.

The answer contains three separate defenses.    The first is a denial of the possession, or right of possession, in the said plaintiff, a denial of the chattel mortgage claimed by him, and a denial that the seizure by the defendant was wrongful.    The second defense, admitting plaintiff's possession and rights under his chattel mortgage, alleges that he has no other rights, and justifies defendant's seizure under certain writs of attachment against J. L. Heatherly, the mortgagor, which he held for execution, as sheriff of said county.    The third defense justifies defendant's seizure under said writs of attachment, as sheriff; alleges that the said mortgage and transfer by Heatherly to Wade was fraudulent and void as against Heatherly's creditors, and that the same was fraudulent in fact, because made with intent to hinder, delay, and defraud creditors, as shown by facts and circumstances fully set forth, and which were well known to said Wade, and fraudulent in law upon its face, by reason of its terms and provisions, and because not acknowledged or recorded as required by law.

The reply denies the validity of said writs of attachment and most of the facts and circumstances charging fraud, but admits that Wade's only claim to said goods and possession thereunder is based upon said chattel mortgage; denying that the same is a "pretended" or "alleged" chattel mortgage.

As will be seen, the pleadings admit that Heatherly was

the general owner of the goods in controversy; the plaintiff
claiming right of possession under a chattel mortgage from
Heatherly, and the defendant under certain writs of attach-
ment against Heatherly.

The plaintiff in the court below replevied the stock of
goods from the sheriff, who had them in possession by vir-
tue of writs of attachment which it is not denied were legally
sued out. The plaintiff, in his complaint and reply and
evidence, and in every other way so far as we are able to
ascertain, claims the rights to the goods by virtue of a mort-
gage executed to him, and that, immediately upon the exe-
cution of the mortgage by Heatherly, the mortgagor, he
went into possession of said stock by virtue thereof, and
not otherwise, and was in such possession by virtue thereof
alone when the sheriff, who had writs of attachment against
Heatherly, the mortgagor, levied upon said stock.

Upon the trial of said cause, the plaintiff, to prove his
right to said stock of goods, offered in evidence this
same mortgage upon which he relies to establish his case.
To the introduction of this the defendant objected on the
grounds: 1. Because the offer was of the original and not
an exemplification of the recorded mortgage. 2. Because
the indorsement shows that it was recorded before it was
acknowledged. 3. Because it is immaterial and irrelevant,
being upon its face and by its terms illegal, fraudulent, and
void. Said mortgage was excluded by the court. Plain-
tiff then offered an exemplified copy of the record of said
mortgage, viz., Exhibit I, which, being objected to on the
last two grounds above set forth, was also excluded. Suf-
ficient to say that again the said mortgage was offered in
evidence, and again objected to by defendant, for the rea-
sons heretofore given, and the objection sustained, the
mortgage ruled out, and exception taken and allowed. The
mortgage, in fact, never did get to the jury in this case.
The plaintiff made no effort to amend his pleading at any

time during the trial, and the court required no amendment to said pleadings.

We gather, however, from subsequent proceedings had in the case, that the court permitted the plaintiff to treat his right to the possession of the goods in the nature of a pledge, and permitted oral evidence only to prove the same, at all times expressly ruling out the mortgage, or paper writing, to all of which the defendant objected. The objection was overruled, and exception taken by the defendant and allowed, and this is one of the errors assigned for our consideration here, which, occurring at the very threshold of the case, may be decisive of it, and we will at once consider it. But, before doing so, we will make some general observations concerning pleadings and proofs under the code.

The rule that the *allegata* and the *probata* should correspond prevails under the code as well as at common law. Indeed, if this salutary principle was not reasonably adhered to under any system of pleadings, utter confusion would ensue, and the whole theory of pleading would only be a "delusion and a snare," and the prime object of every pleader would be to so frame his allegations as to most effectually conceal his true cause of action and deceive his adversary. The rule at common law was said to be not only sound in principle, thoroughly established by precedent, but absolutely essential to the administration of justice; and this was carried so far at common law as to hold that immaterial averments — that is, averments which were not actually impertinent as surplusage — must, if laid in the declaration, be proved.

The rule is stated by Mr. Chitty to be, that every allegation in an inducement which is material and not impertinent and foreign to the cause must be proved as alleged, and particularly as applied to written instruments, and failure to make such proof was regarded as a material variance. The code does not go to this extent, and has wisely restricted

the application of the principle to material averments or allegations only; and, as thus explained, the rule is as sound, salutary and essential to the administration of justice under the code as at common law.

A very clear and able writer on this question, and one thoroughly imbued with the enlightened principles which the code system was intended to inculcate, says: "The very object and design of all pleading by the plaintiff, and of all pleading of new matter by the defendant, is that the adverse party may be informed of the real cause of action or defense relied upon by the pleader, and may thus have an opportunity of meeting and defeating it if possible at the trial. Unless the petition or complaint on the one hand, and the answer on the other, fully and fairly accomplishes this purpose, the pleading would be a useless ceremony, productive only of delay, and the parties might better be permitted to state their demands orally before the court at the time of the trial. The requirement, therefore, that the cause of action or the affirmative defense must be stated as it actually is, and that the proofs must establish it as stated, is involved in the very theory of pleading. Pom. Rem. & Rem. Rights (2d ed.), § 554.

It may be stated in passing, also, that a cardinal principle of evidence, unchanged and unchanging, is that parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument; and that when the terms or contents of a written instrument are the subject of inquiry, the instrument itself, if in existence and capable of being produced, is the only proper evidence. This is elementary.

The plaintiff in the court below claimed in his pleadings, not only in the complaint, but in his reply, to be entitled to recovery in the action by virtue of a chattel mortgage. He rested his whole claim upon it. The denials of the defendant put not only the existence of the said mortgage at issue, but its validity, and, hence, it was incumbent upon the

plaintiff to prove not only the existence of the mortgage, but its validity; and this could only be done by the instrument itself, it being in existence, and in the possession of the plaintiff. This, we have seen, was offered by the plaintiff, objected to by the defendant, and ruled out by the court, not by reason of defects of a clerical character, but because the said instrument was not a mortgage in law, but was absolutely void.

This having been done by the court, the plaintiff had no evidence whatever to sustain the issue on his part. It was not a variance, material or immaterial; it was a failure of proof (see code, § 107), and it follows as a matter of course that, if the ruling of the court was correct, the plaintiff had utterly failed to make out a case, and the court should have so ruled, and given judgment for the defendant.

The mortgage in question, however, appears in the record in this case, and we presume is here for our consideration and inspection.

We understand from the record that the mortgage was held invalid, not, as before remarked, on account of clerical errors and defects in its execution, but upon the broad ground that there were no words in said instrument purporting to grant, sell, convey, etc., usually found in mortgages. Such words are entirely unnecessary. The word "mortgages" covers the whole ground. It has not only a well-defined meaning in this territory, as generally understood, but it is clearly defined by statute. The rule at common law, certainly unchanged by the code, is that words are generally taken in their ordinary sense, and the terms of every written instrument are to be understood in their plain, ordinary, and popular sense, unless they have generally, in respect to the subject-matter, acquired a special sense. The word "mortgages" has only one signification in this territory, popular or otherwise, — "security for debt or obligation;" and we find by inspection that the mortgage on its face was in all respects a valid one. Jones,

o

Chat. Mortg., § 178, says: " If a mortgagee takes posses-
sion of the mortgaged chattels before any other right or
lien attaches, his title under the mortgage is good against
everybody, if it was previously valid between the parties,
although it be not acknowledged and recorded, or the rec-
ord be ineffectual by reason of any irregularity." *Chipron
v. Feikert*, 68 Ill. 284; *Frank v. Miner*, 50 Ill. 444; *Mc-
Taggart v. Rose*, 14 Ind. 230; *Brown v. Webb*, 20 Ohio,
389; *Chase v. Denny*, 130 Mass. 566; *Parsell v. Thayer*,
39 Mich. 467; *Eastman v. Water Power Co.*, 24 Minn. 437;
*Clute v. Steele*, 6 Nev. 339; *Moresi v. Swift*, 15 Nev. 215;
*Field v. Baker*, 12 Blatchf. 438; *Brown v. Platt*, 8 Bosw.
324; *Cameron v. Marvin*, 26 Kan. 612; *Hauselt v. Harri-
son*, 105 U. S. 401, 405; *Wood v. Weimar*, 104 U. S. 786;
*Hamlin v. Jerrard*, 72 Me. 62, 79; *Baldwin v. Flash*, 58
Miss. 593; *Greeley v. Reading*, 74 Mo. 309. The subse-
quent delivery cures all such defects, and it also cures any
defect there may be through an insufficient description of
the property. The taking of possession is an identification
and appropriation of the specific property to the mortgage.
If there be two mortgages of the same property, and both
be void as to creditors and purchasers by reason of not be-
ing acknowledged before the proper officer, if the junior
mortgagee first obtains possession, he will hold it as against
the prior mortgagee; and in some states the fact that he
had notice of the prior mortgage would make no differ-
ence, while in others actual notice would be equivalent to
constructive notice by record. Delivery of possession
under a mortgage before rights have been acquired by
others will cure any invalidity there may be in the instru-
ment, whether arising from an insufficient description of
the property, an insufficient execution of the instrument,
the omission to record it, or from its containing a provision
which makes it void except as between the parties."

The court ruled, however, that the plaintiff might treat
the transaction brought about by this mortgage as a pledge,

and that oral or verbal testimony would be admitted to establish the relation of pledgee and pledgeor. This was no less error than the former ruling; for the instrument above set forth was in every respect a perfect pledge, and contains all the provisions of a pledge, and being the instrument containing the agreed stipulations of the parties, and especially the rights of the plaintiff, was the only competent evidence in the case to prove anything; and here again was an entire failure of proof, because the only competent proof—to wit, the instrument above set forth—was not allowed in evidence.

It has been suggested, however, by appellee's counsel, that § 105 of the code in regard to variance here applies. The definition of ''variance'' is anything but definite, and the application of this provision of the code has ever been a fruitful source of trouble and disagreement among jurists, some claiming with much force that its principal mission is to provide for a quarrel between court and counsel. We think, however, that this section of the code cannot be invoked in this case; but it is clearly a case of failure of proof. Section 107 of the code reads as follows: '' When, however, the allegation of the cause of action or defense to which the proof is directed is not proved, not in some particular or particulars only, but in its entire scope and meaning, it shall not be deemed a case of variance within the last two sections, but a failure of proof.''

The error of the court below was evidently caused by making a distinction under our law between a mortgage and a pledge. A mortgagee in possession, under our statutes, and the pledgee are practically, if not identically, the same. The same rights are secured by the one as the other. No legal title passes in either case, but merely the right of actual possession of the property for the purposes of security. The difference between a mortgage and a pledge, independent of our statute, was, that a mortgage transferred the title to the mortgagee, to be revested by the perform-

ance of the condition, while, by a pledge, the pledgeor retains the title in himself, and parts with the possession for a special purpose. By a mortgage the title is transferred; by a pledge the possession. Jones, Chat. Mortg., § 4; and Jones, Pledges, § 9.

Our statute, however, as we have seen, makes a mortgagee in possession and a pledgee occupy a very similar, if not identical, position, governed by the same rules in regard to their effects (see code, c. 141, §§ 1986, 1987; *Byrd v. Forbes*, 3 Wash. T. 318, 324; and this brings us to a review and modification of the doctrine announced in that decision relative to attaching property in the possession of the mortgagee. The learned chief justice, in delivering the opinion of the court, says: "It is not disputed but that under the statutes of this territory the interest of a mortgagor in mortgaged personal property is subject to attachment. Liability of his interest to be attached exists even in states where the mortgage operates to pass to the mortgagee the title to the goods. *Hull v. Carnley*, 11 N. Y. 501. *A fortiori*, such liability obtains under our statutes, which clearly will not consist with any other doctrine than that a chattel mortgage is a mere security under which no title can possibly pass except by foreclosure and sale. Such a mortgage is defined as to its nature and effect by the provisions of chapter 141, §§ 1986-1999, of the code, being therein spoken of and treated as gining a lien only and serving for a security, and as needing foreclosure to divest the title of the mortgagor. Sections 618 and 619 of the code speak of such mortgages as instruments 'creating liens,' provide for their foreclosure, class them with mortgages of real property, and assimilate the foreclosure of them to that of mortgages on real property, which have been determined by this court to be under our statutes mere securities. *Parker v. D'Acres*, 2 Wash. T. 439. As a general rule, any interest that may be sold on execution is subject also to process of

attachment, and it is expressly provided in § 1990 that a
mortgagor's interest in goods may be taken in execution.
Under our law of attachment, there exists no other way of
making the attachment levy upon chattels capable of man-
ual delivery than to take them into custody.   Code, § 179.
Section 1990 contemplates such a taking when it provides
that the officer who executes the process shall mail to the
mortgagee, 'or to his agent, if their post-office is known,
a notification of the intended sale at the time such mort-
gaged property is seized under said process, or within five
days thereafter,' and that said 'property shall not be sold
within thirty days after its seizure,' and that he shall post
notices at the time of 'the seizure under said process.'
The provisions of § 1990 are inconsistent with the idea that,
after levy by the sheriff, the mortgagee can demand and
take possession.   So, too, are all those provisions of stat-
ute which compel us to regard a chattel mortgage as a mere
security.   The theory upon which, at common law, and in
some states of this Union, the mortgagee can take posses-
sion, and even dispossess the sheriff, is, that the mortgagee
is owner, and the sheriff a trespasser.   *Hall v. Sampson*,
35 N. Y. 274; 91 Am. Dec. 56.   An express stipulation in
a chattel mortgage, that the mortgagee may take posses-
sion upon a certain contingency, may be good as between
the parties to the instrument, so as to allow the mortgagee
to take possession from the mortgagor; but it cannot, in
face of our statutes, be held to authorize a taking or re-
taining the possession as against creditors of the mortga-
gor seeking to attach his interest, or subject it to execu-
tion.   Under our statutes, an unforeclosed mortgage is a
mortgage still, regardless where the possession lies."

The doctrine is here announced that, under our statute,
whether a mortgagee be in possession or out of possession
of the mortgaged property, a subsequent or lagging creditor
may, by process of attachment, take possession of the mort-
gaged property.   We have no doubt that the property, if

in the hands of the mortgagor, could be taken possession of by process of attachment, and the property taken into actual custody by the sheriff. We further hold that the mortgagee in the possession of the mortgaged property, the mortgage being valid between the parties and made in good faith, has the right of possession against all the world, nor can he be deprived of that possession until his debt or obligation for which the mortgage is executed has been fully paid or satisfied; and to hold otherwise would be to disregard plain provisions of contract, and, to this extent, the decision in the case of *Byrd v. Forbes* on this point was merely *obiter*, and is modified in accordance with the view expressed in this opinion.

We hold the law to be that any interest that the mortgagor may have in the mortgaged property in the hands of the mortgagee can be reached by the process of garnishment; in other words, the mortgagee can be garnished for any interest that may exist after his mortgage is satisfied, but the possession of the honest mortgagee cannot be disturbed; and this, being the rule, with a court of equity ever keeping watch and eternal guard over the management of the mortgaged property, ready to step in and give relief if improperly diverted, fully subserves the interests of all the parties, and is in accordance with reason and sustained by authority.

We think it is useless to review the other errors assigned in this case. The court committed error at the very threshold in disregarding the paper writing called the mortgage, and not permitting the plaintiff to introduce the same in evidence as the foundation of his right, and the only foundation of his right as mortgagee or pledgee, and we have seen their rights are the same; and hence all the proceedings thereafter were tinged with and partook of this error, as it permeated the whole of the proceedings, and they were all nugatory and void.

It is claimed, however, that the vital question involved in

this case was the actual fraud in executing the mortgage, and fraud in fact; and that the question was fully passed upon by the jury. It is not the province of this court to determine whether it was fully passed upon or not. We do not know what the jury would have determined had competent evidence been before them. We only know what they determined from incompetent evidence, and, having no proper evidence upon which to base their verdict, the jury could render no verdict that should be sustained in law. It may be that the jury has rendered a proper verdict on incompetent, or, rather, no evidence whatever. This court cannot and will not determine what a jury will do on competent evidence. The error that we are called to pass upon at the very threshold of this case was the improper rejection of the mortgage, or paper writing which was called a mortgage, from the jury, which is the only proper evidence to establish the claim of the plaintiff, and which wholly fails without it under the pleadings.

Let the case be remanded, with the direction to the court below to admit the mortgage or paper writing in evidence, and then let the case proceed as in ordinary trials in cases of this character.

BURKE, C. J., concurs.