'(April 10, 1920.)'

GEORGE H. MOSELEY, Respondent, v. THE FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation, Appellant.

[189 Pac. 862.]

ATTACHMENT—SUMMONS—DEFECTIVE SERVICE—ATTACHABLE INTEREST—RECOVERY ON ATTACHMENT BOND—MEASURE OF DAMAGES.

1. Any defect in the service of summons is cured by the subsequent appearance and answer of the defendant.

2. Where the legal title to attached real property was in the United States at the date of the levy, and the equitable title was in one who was under contract to convey the property to the de-

fendant in the attachment suit and another, the defendant had an attachable interest in such real property.

3. Under the statute of this state one against whom an attachment has wrongfully issued is entitled to recover as a part of his damages therefor from the surety on the attachment bond the necessary expenses incurred by him in defending against such attachment.

4. Where plaintiff and defendant in an attachment suit were both nonresidents of the state at the date of the commencement of the action, the attachment proceeding alone being the effective cause of bringing the defendant into the Idaho court, and the defendant having thereafter been compelled to try the case on its merits in order to purge his property of the attachment lien, upon winning such suit he is entitled to recover from the surety on the attachment bond, as proper damages, his necessary expenses, court costs and attorney fees incurred in defending the attachment suit.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles P. McCarthy, Judge.

Action on attachment bond. Judgment for plaintiff. *Affirmed.*

Wyman & Wyman, for Appellant.

Where an attachment is dissolved upon motion, the weight of authority favors the rule that reasonable attorney's fees and disbursements incurred upon such motion are properly recoverable, although there are many cases holding the contrary. (*Jacobus* v. *Monongahela Nat. Bank,* 35 Fed. 395; *Patton v. Garrett,* 37 Ark. 605; *Commonwealth v. Meyer,* 170 Pa. 380, 32 Atl. 1044; *First Nat. Bank of Chillicothe v. Mc-Swain,* 93 S. C. 30, Ann. Cas. 1914D, 809, 75 S. E. 1106; *Stringfield v. Hirsch,* 94 Tenn. 425, 29 S. W. 609.)

Where such damages are allowed, they are such as arise out of the attachment itself and do not include fees and expenses incurred in defending the main suit. (*White v. Wyley,* 17 Ala. 167; *Elwell v. Seattle, S. Fish Co.,* 2 Alaska,

3. Measure of damages recoverable for wrongful levy of writ of attachment, see notes in 68 Am. St. Rep. 267; Ann. Cas. 1915B, 1219.

617; *Johnson v. Farmers' Bank,* 4 Bush (Ky.), 283; *Trapnell v. McAfee,* 3 Met. (Ky.) 34, 77 Am. Dec. 152; *McClure v. Renaker et al.,* 21 Ky. Law Rep. 360, 51 S. W. 317; *Goodbar v. Lindsley,* 51 Ark. 380, 14 Am. St. 54, 11 S. W. 577; *Hilfrich v. Meyer,* 11 Wash. 186, 39 Pac. 455; Drake on Attachments, sec. 176; Shinn on Attachment and Garnishment, sec. 190, p. 338; *Johnson v. Farmers' Bank,* 4 Bush (Ky.), 283; *Alexander v. Jacoby,* 23 Ohio St. 358; Wade on Attachment, 301.)

This is true even where jurisdiction is obtained solely by attaching the property of a nonresident defendant who subsequently appeared and defended the action. (*Gonzales v. De Funiak Havana Tobacco Co.,* 41 Fla. 471, 26 So. 1012; *Frost v. Jordan,* 37 Minn. 544, 36 N. W. 713.)

Only those damages can be allowed that are the proximate and natural result of the attachment. (*Thompson v. Webber,* 4 Dak. 240, 29 N. W. 671; *State v. Thomas,* 19 Mo. 613, 61 Am. Dec. 580; *Floyd v. Anderson,* 36 Okl. 308, Ann. Cas. 1915A, 348, 128 Pac. 249, 43 L. R. A., N. S., 788; *Elder v. Kutner,* 97 Cal. 490, 32 Pac. 563; *McDonald v. Fett,* 49 Cal. 354; Drake on Attachment, sec. 175.)

Martin & Cameron, for Respondent.

Where trial of the main action is rendered necessary to dissolve an attachment, the expenses of the trial are recoverable by the attachment defendant in an action on the attachment bond. The fact that the attachment defendant did not move to set aside the writ does not preclude recovery. (Drake on Attachment, sec. 176; *Straschlitz v. Unger,* 153 N. Y. Supp. 118; *Balinsky v. Gross,* 72 Misc. Rep. 7, 128 N. Y. Supp. 1062; *Epstein v. United States Fidelity & G. Co.,* 29 Misc. Rep. 295, 60 N. Y. Supp. 527.)

Counsel fees incurred in defending the attachment may be recovered on the attachment bond as an element of damages. (*Plymouth Gold Min. Co. v. United States Fidelity Co.,* 35 Mont. 23, 10 Ann. Cas. 951, 88 Pac. 565; *Wilson v. Root,* 43 Ind. 486; *Trapnall v. McAfee,* 3 Met. (Ky.) 34, 77 Am. Dec. 152; *State v. McHale,* 16 Mo. App. 478; *Territory ex rel.*

*Lyser v. Rindskopf*, 5 N. M. 93, 20 Pac. 180, and cases cited; 4 Cyc. 885; *Parish v. Van Arsdale etc. Co.*, 92 Kan. 286, Ann. Cas. 1916B, 981, 140 Pac. 835; *Vesper v. Crane Co.*, 165 Cal. 36, 130 Pac. 876, L. R. A. 1915A, 541; *State ex rel. Pinkley v. Yount*, 186 Mo. App. 258, 172 S. W. 431; *Kennedy v. Meacham*, 18 Fed. 312; *Miller v. Donovan*, 13 Ida. 735, 13 Ann. Cas. 259, 92 Pac. 991; Waples on Attachment and Garnishment, secs. 1027, 1033; *Bash v. Howald*, 27 Okl. 462, 112 Pac. 1125; *Van Sickle v. Franklin* (Okl.), 162 Pac. 950.)

VARIAN, District Judge.—Charles F. Glaeser filed a complaint against respondent in the district court in Lincoln county, October 24, 1913, and on the same day filed an affidavit for attachment and undertaking, with appellant as surety, conditioned as provided by the statute. Both Glaeser and Moseley, the respondent, were residents of Chicago, Illinois, at the time the attachment was brought. The grounds for attachment, as appears from the affidavit, was the non-residence of the defendant. The writ issued forthwith and on October 25, 1913, was levied upon "all the right, title, claim and interest" of the defendant in and to certain real property standing in the name of Julia N. Olmstead on the records of Lincoln county. All moneys, etc., belonging to the defendant in the First National Bank of Jerome were garnished. The bank answered the garnishment, stating, in effect, that it held in escrow certain agreements to convey lands to one Hall and the respondent, Moseley, separate parcels to each and separate parcels to them jointly; that the payments under said agreements had not been made and the deeds were undelivered; that the money to make the payments had been deposited by Hall in the escrow. The land attached is embraced within the escrow contracts between Julia N. Olmstead and respondent and Hall.

The evidence shows that the initial payments on the purchase price had been made by respondent and Hall, the notes and mortgages representing the deferred payments to Mrs. Olmstead had been executed by Moseley and Hall and their wives, and deposited in the escrow together with the deeds to

them from Mrs. Olmstead.  While the usual·receiver's final receipt had been issued to her, Mrs. Olmstead had not received patent at the date of the escrow and patent did not issue until January 24, 1914.  The escrow proceeding was resorted to by the parties for the protection of the parties until patent should issue.

October 24, 1913, summons issued and was returned unserved October 27, 1913.  Plaintiff's attorney filed affidavit praying service of an *alias* summons October 29, 1913, and order of publication made by the clerk.  No *alias* summons in fact ever issued.  It is inferred that the original summons was marked *"Alias* Summons" and published.  On December 15, 1913, respondent, Moseley, answered to the merits in the attachment action.  No motion to dissolve the attachment was made.

On December 16, 1913, Glaeser, plaintiff in the attachment suit, acting through his attorney of record, and the First National Bank of Jerome, through its attorney, entered into a stipulation to the effect that the money, notes and mortgages held by it under the escrow agreement be delivered to Mrs. Olmstead under said escrow agreement and that the deeds held by it under the escrow agreement conveying land to George H. Moseley, respondent here, be recorded by the garnishee in the county recorder's office; that the deeds to Hall be delivered to him; and the money paid to Mrs. Julia Olmstead—all in case the parties "complete and fulfil" the escrow agreement.  It was further stipulated that on completion of the contract and distribution of the money and papers and recording of the deeds to Moseley, the garnishee "be released from any and all liability by reason of such attachment and garnishment."  The attachment lien was not released as to the real property.  On the same date, December 16, 1913, Hall and Moseley conveyed by warranty deed the lands contracted from Julia N. Olmstead to the Jonothan Valley Orchards Company, a corporation.  Moseley testified that this conveyance was made subject to the attachment lien and that the consideration therefor was paid in stock of the corporation issued to them when they executed

the deeds.   Respondent Hall and one Bewes owned all of the issued stock of the Jonothan Valley Orchards Company at that date.

On October 13, 1914, the attachment suit was tried to a jury and resulted in a verdict for the defendant, Moseley, and judgment was on that date entered against the plaintiff, Glaeser, in respondent's favor for his costs and the attachment discharged.   Later demand was made upon appellant as surety on the attachment bond and this action was commenced in the district court in Ada county, which resulted in a judgment against appellant for respondent's traveling expenses, court costs and attorney fees, the proximate damages incurred by the attachment proceedings.   From this judgment appellant appeals.

Appellant's first contention is that the service of summons was void and that the defendant in the attachment suit (respondent here) was under no obligation to appear and defend the action.

No grounds existed for the dissolution of the attachment on motion.   It was properly and legally issued.   (C. S., sec. 6812; *Mason v. Lieuallen,* 4 Ida. 415, 39 Pac. 1117.)

Assuming the *service* of summons to be void, the summons itself was not void, and under the rule announced in *Ridenbaugh v. Sandlin,* 14 Ida. 472, 125 Am. St. 175, 94 Pac. 827, the writ of attachment was in full force.   By subsequently appearing and answering in the attachment suit any defect in the service of summons was cured.   (C. S., sec. 6671.)

The next contention is that the attachment proceeding created no lien, the legal title to the attached real property, at the date of the levy, being in the United States, the equitable title in Julia N. Olmstead, who had contracted to sell and convey it to respondent and Hall, who, in turn, had contracted to convey it to Jonothan Valley Orchards Company. The conveyance by respondent to the corporation was made, pursuant to contract, after the levy of the attachment, and warranted the title.   At the date of the levy, respondent and Hall had deposited in the bank the money, notes and mortgages called for in their contracts with Julia N. Olmstead,

who had also deposited her deeds, all to be delivered when United States patent to the lands should issue. Had the patent not issued, or for any reason the United States had refused to grant its patent to Mrs. Olmstead, then the interest in the money deposited in the cash payment under the contract was held under the garnishment. The bank's answer to the garnishment shows that this money was all paid by Hall to the bank. The evidence clearly shows that respondent had contributed at least a portion of this cash payment and had a one-half interest in the Olmstead deal. The attachment was a lien upon whatever interest respondent had in the land. In the event the contract with Mrs. Olmstead was fulfilled the attachment was a prior lien upon the land conveyed by respondent to the Jonothan Orchards Company, which was conveyed subject to the attachment as testified to by respondent. The stipulation of December 16, 1913, released the garnishment in case the contract was fulfilled with Mrs. Olmstead; if it were not fulfilled, then the garnishment attached to the interest of respondent in the moneys on deposit for Mrs. Olmstead.

Respondent had an interest in the real property, at the date of the levy which was subject to attachment. If that interest never ripened into title he still had an interest in the purchase money that was subject to the garnishment.

Appellant's third contention is that the expense of trial and attorney's fees in defending the attachment suit upon its merits should not be allowed as damages in an action upon an attachment bond.

The trial court allowed respondent damages for his loss of time from his business, his traveling expenses in making two trips to Idaho from Chicago, to defend the attachment action and his attorney's fees in that action, the amount having been stipulated by counsel as a reasonable attorney fee for the services rendered.

The undertaking on attachment upon which this suit is brought, is "to the effect that if said defendant recover judgment, or if the attachment be wrongfully issued, the said plaintiff will pay all costs that may be awarded to said

defendant and all damages which he may sustain by reason of the attachment, not exceeding the sum of Fifteen Hundred and no/100 Dollars.'' The undertaking follows the wording of the statute. (C. S., sec. 6781.)

The authorities are not uniform, but we conceive the weight of authority, in jurisdictions having statutes similar to ours, to be that one against whom an attachment has wrongfully issued is entitled to recover' as a part of his damages for the wrong, the expenses which he incurred in defending against such attachment (6 C. J., p. 542, sec. 1331), and that, as a general rule, expenses incurred in the defense of the main action in which the attachment issued, are not recoverable (6 C. J., p. 543, sec. 1330), but when a trial of the main action is necessary to vacate the attachment, the expenses of trial are recoverable against the sureties on the attachment bond. (*Tyng v. American Surety Co.*, 69 App. Div. 137, 74 N. Y. Supp. 502; *State ex rel. Pinkley v. Yount*, 186 Mo. App. 258, 172 S. W. 431; *Straschitz v. Ungar*, 153 N. Y. Supp. 118.)

The authorities are not in harmony on the question of the right to recover counsel fees expended in the attachment suit in an action upon the undertaking. The preponderance of authority favors the rule that a party may recover, as damages sustained by reason of the wrongful attachment, his reasonable counsel fees incurred in defending against the attachment (6 C. J., p. 543, sec. 1334), and as a general rule will be limited to services rendered in connection with the attachment itself and no allowance can be made for services rendered in defending the principal action. (6 C. J., p. 545, sec. 1335.)

An exception to the rule arises where the entire defense to the main action merely tended to show the wrongful issue of the attachment (*Union Mill Co. v. Prenzler*, 100 Iowa, 540, 69 N. W. 876), or where a trial of the principal action was necessary to dispose of the attachment. (*Balinsky v. Gross*, 72 Misc. Rep. 7, 128 N. Y. Supp. 1062; *Tyng v. American Surety Co.*, and *State ex rel. Pinkley v. Yount, supra.*)

Respondent made no motion to dissolve the attachment in the principal action. Such a motion would have availed nothing under the circumstances, as this court has held in *Mason v. Lieuallen, supra*, that the "only ground upon which a court or judge is authorized to discharge an attachment, under the statutes of Idaho, is that the writ has been 'improperly or irregularly issued.'" There is no contention here but that the attachment in the principal action was properly and regularly issued. It has been held that it is incumbent upon the defendant to show that he has made all reasonable efforts by application to the court to vacate the attachment before he is entitled to recover his expenses and attorney fees incurred in defense of the attachment, but where it appears (as in this instance) "that a motion to vacate would be futile, it cannot be said that the defendant has failed to make every reasonable effort to vacate." (*Balinsky v. Gross, supra.*)

The plaintiff and defendant in the attachment suit were both residents of Chicago at the date of the commencement of the action. By coming into the courts of this state to bring his action, plaintiff could obtain no substantial relief against respondent except by the attachment proceeding. The attachment proceeding alone was the cause of bringing respondent into the Idaho court to defend. Having been compelled to try the case on its merits in order that he might purge his property of the attachment lien, he should recover, as proper damages, his necessary expenses, costs and attorney's fees in defending the attachment suit.

The judgment is affirmed. Costs are awarded to respondent.

Morgan, C. J., and Rice, J., concur.