[No. 28648. *En Banc.* October 20, 1942.]

AXEL OLSEN et al., *Respondents,* v. NATIONAL GROCERY COMPANY et al., *Appellants.*

AXEL OLSEN et al., *Respondents,* v. M. L. DAVIES COMPANY et al., *Appellants.*[1]

[1]Reported in 130 P. (2d) 78

*Bogle, Bogle & Gates,* and *Claude E. Wakefield,* for appellants.

*C. E. H. Maloy,* for respondents.

SIMPSON, J.—Axel Olsen and Mary W. Olsen, his wife, instituted two actions for the recovery of damages occasioned by the issuance of writs of garnishment which had caused the impounding of certain amounts due on insurance policies on their ship, which had been lost at sea. The cases were consolidated for purposes of trial and will be so considered in this appeal. The consolidated case, tried to the court sitting without a jury, resulted in a judgment in favor of plaintiffs. Defendants have appealed.

In making a statement of the essential facts, we shall closely follow the statement made in appellants' brief, because that statement is clear, concise, and sufficiently comprehensive.

Prior to February 10, 1939, respondents owned a sixty-five foot motorboat known as the "Ruth C." That boat, loaded to capacity with cargo, as a common carrier by water, sailed from the city of Seattle for Alaska, and capsized and sank about February 10, 1939, resulting in the total loss of the boat and all the cargo.

February 27, 1939, respondents, anticipating action by cargo underwriters or shippers of the cargo on board the vessel "Ruth C," agreed in writing to pay attorney C. E. H. Maloy the sum of three thousand dollars for defending the action in the superior court and fifteen hundred dollars for his services in the event the case

should be appealed to the supreme court. On the same day, respondents, by written assignment to Mr. Maloy, assigned all their right, title, and interest in the insurance fund as security for the attorney's fees and for other purposes.

As a result of the loss of the "Ruth C," certain hull insurance, written by the North River Insurance Company, a corporation, became payable to the respondents and to the Atlas Engine Co., a corporation, for the loss of the boat in the sum of fourteen thousand dollars.

Thereafter, appellants here, as owners of the cargo, brought action in the superior court of King county seeking to recover damages for the loss of the cargo. At that time, they sued out writs of garnishment directed to the insurance company, which writs impounded certain sums due respondents. The garnishee defendant, North River Insurance Company, answered the writs to the effect that it held the insurance fund subject to the rights of the Atlas Engine Co. and subject to the assignment made to Mr. Maloy.

After the action had been instituted, Mr. Maloy filed a complaint in intervention, asserting that his right to the fund by virtue of the assignment was prior and superior to any right acquired by these appellants under the writs of garnishment. The trial of the consolidated case before a jury resulted in a verdict for these respondents, who were the defendants in those actions. Following the trial, the superior court entered a judgment notwithstanding the verdict in favor of the plaintiffs in that action. Upon appeal to this court, the judgment notwithstanding the verdict was reversed, and a judgment of dismissal entered upon a verdict of the jury (*National Grocery Co. v. Olsen,* 6 Wn. (2d) 491, 108 P. (2d) 320).

After the entry of the judgment of dismissal, respondents here started the present actions against these appellants, seeking to recover damages for the wrongful garnishment of the fourteen thousand dollar insurance fund held by the North River Insurance Company. The damages sought to be recovered in the actions included interest, attorneys' fees incurred for the preparation and trial of the former action, and what may be referred to as miscellaneous costs and expenses which were not taxable in the former action.

The first question is whether the respondents have a right to recover without showing lack of probable cause for the suing out of the writs of garnishment.

"A garnishment is the attachment of a credit or credits, and the rule is the same whether one attaches tangible physical property by means of a writ of attachment, or attaches credits by means of a writ of garnishment." *Gilmore v. Thwing*, 167 Wash. 457, 9 P. (2d) 775.

Rem. Rev. Stat., § 681 [P. C. § 8000], provides that, before a writ of garnishment may be issued, a bond must be given,

" . . . payable to the defendant in the suit, in double the amount of the debt claimed therein, conditioned that he will prosecute his suit and pay all damages and costs that may be adjudged against him for wrongfully suing out such garnishment."

Rem. Rev. Stat., § 654 [P. C. § 7386], provides that, in an action upon a bond in an attachment proceeding, the plaintiff may recover,

" . . . if he shows that the attachment was wrongfully sued out, and that there was no reasonable cause to believe the ground upon which the same was issued to be true, the actual damages sustained and reasonable attorney's fees to be fixed by the court; . . ."

It will be observed that the garnishment statute provides that recovery may be had upon the bond if the garnishment was "wrongfully" sued out. In the attachment statute, it will be noted that it states that action may be had upon the bond if it is shown that the attachment was

" . . . wrongfully sued out, and that there was no reasonable cause to believe the ground upon which the same was issued to be true."

In other words, the garnishment statute only provides that it is necessary to show that the writ was wrongfully sued out, while in the attachment statute it is necessary to show not only that the writ was wrongfully sued out, but that there was a lack of probable cause for its issuance.

It will be recalled that the action brought for the recovery of the cargo resulted in a judgment of dismissal.

In the present case, there was no attempt to prove lack of probable cause. The question then is whether the judgment of dismissal in the former action shows that the writs were wrongfully sued out within the meaning of the garnishment statute.

In the case of *McGill v. W. P. Fuller & Co.*, 45 Wash. 615, 88 Pac. 1038, the trial court instructed the jury that the judgment for the defendant in the attachment suit was conclusive evidence that the attachment was wrongful, and it was held that the instruction was correct. It was there said:

"The court instructed the jury that the judgment for the defendant in the attachment suit was conclusive evidence that the attachment was wrongful, and this is assigned as error. This instruction was correct. The final judgment for the defendant in the attachment suit was conclusive evidence that there was no indebtedness, and without an indebtedness there could be no rightful attachment."

While that was said with reference to an attachment suit, it is a clear and definite statement as to the meaning of the word "wrongful," and to this extent it applies to the same word used in the garnishment statute. However, if it be assumed that it was necessary to prove probable cause, the result would be the same.

In the case of *McAllister v. Hogue,* 133 Wash. 664, 234 Pac. 657, it was said:

"So far as the respondent's case is concerned, the record shows that he made out a case of no probable cause, while [where] the pleadings admitted that this court had already decided that the attachment was wrong."

In *Taylor v. Wilbur,* 170 Wash. 265, 16 P. (2d) 457, this court stated:

"As to the garnishment bond, there is no provision in the statute (Rem. Comp. Stat., § 681) that liability shall depend upon lack of probable cause. In the section mentioned, it is provided that a bond given in a garnishment proceeding shall be

" ' . . . conditioned that he [plaintiff] will prosecute his suit and pay all damages and costs that may be adjudged against him for wrongfully suing out such garnishment.' "

In view of these decisions and in considering the garnishment statute as it is worded, we hold that it was not necessary for the respondents in this case to show lack of probable cause. The dismissal of the action after trial upon the merits, as already indicated, proved conclusively that the writs were wrongfully sued out.

■ Appellants next argue that the assignment to Mr. Maloy divested the respondents of their title to the fund garnisheed. The pertinent portion of the assignment states:

"This assignment is made for the express purpose of securing said C. E. H. MALOY on account of dis-

bursements and advancements made and to be made by him and for legal services rendered and to be rendered in defending litigation against us by cargo underwriters and/or shippers of cargo on board the MV 'RUTH C' on the voyage on which she was lost, and to secure the following parties to whom we are indebted for necessaries and supplies used in the operation of said MV 'RUTH C', to wit: . . ."

Later in the assignment, the assignee is given power "to sue for, collect and discharge, or sell or assign" the insurance fund.

Appellants contend that this assignment shows that the respondents had parted with their right and title to the fund. However, the assignment expressly stated that it was for the purpose of security. The fact that the assignee was given power to sue for and collect the fund, or sell or assign the same, did not operate to overcome the express provision and divest the respondents of their interest in and title to the fund. This assignment, in law, constituted a pledge.

In *Hodge v. Truax*, 184 Wash. 360, 51 P. (2d) 357, 103 A. L. R. 420, it was said:

"The assignment recites that it was intended as 'collateral security.' The term 'collateral security' refers to personal property and, in common understanding of the term, to a chose in action. A transaction by which collateral security is delivered by a debtor and accepted by the creditor constitutes a pledge."

It being, in effect, a pledge of personal property, the assignment did not destroy the respondents' interest in or title to the fund. *Marsh v. Wade*, 1 Wash. 538, 20 Pac. 578. In addition to this, all the parties to the assignment testified that it was intended as security, and this testimony was properly admitted.

In *Keeler v. Commercial Printing Co.*, 16 Wash. 526, 48 Pac. 239, the question was whether the transfer

of a promissory note had been made for security only, and it was there said:

"It is also a well settled rule that a transfer absolute upon its face may be shown to have been given for security only. Jones, Pledges, §§ 82, 141 and 155. *Hazzard v. Duke,* 64 Ind. 220; *Wood v. Matthews,* 73 Mo. 477."

■ The next question concerns the allowance of damages. The trial court allowed interest upon the fund at the legal rate and this was a proper element of damages. *James v. Cannell,* 135 Wash. 80, 237 Pac. 8.

■ Appellants contend that attorney's fees are not a proper item of damages for wrongful garnishment and in any event must be limited to a reasonable fee fixed by the court and allowed only for releasing the garnishment as distinguished from services rendered in the main action. On the other hand, respondents take the position that they were entitled to attorney's fees for the trial upon the merits and the appeal for the reason that, the action having resulted in a dismissal, the writs were wrongfully sued out.

In *James v. Cannell, supra,* the general rule with reference to the recovery of damages where a writ of garnishment is wrongfully sued out is as follows:

"It is the general rule in cases of this character that the recoverable damages are only those which naturally flow from the result of the garnishment, and that unusual and speculative damages are not recoverable."

In passing, it will be noted that, in that case, the writ of garnishment was discharged prior to a trial upon the merits, and that, other than stating the general rule, it does not reach the question that is before us at this time.

In *McFarland v. Ratcliffe,* 167 Wash. 673, 9 P. (2d) 1090, it was held that, where an attachment bond could not be dissolved until after a trial on the merits,

which resulted in a dissolution of the attachment, a reasonable attorney's fee in that suit was a proper element of damages in a subsequent action on the attachment bond for wrongful attachment, and that there would be no segregation of damages for services on the writs and for services for dissolution of the attachment.

Furthermore, in the *James v. Cannell* case, it was held that, so far as attorney's fees for a trial upon the merits were concerned, the garnishment statute and the attachment statute have the same meaning.

In the case of *Taylor v. Wilbur,* 170 Wash. 265, 16 P. (2d) 457, recovery was sought upon a garnishment and an attachment bond for damages including an attorney's fee in the main action, and it was there held that such a fee was a proper element of damages. In that case, the trial court had sustained a demurrer to a complaint upon the ground that it did not state a cause of action, and, upon appeal, it was reversed. Thereafter, the action was brought upon the bonds for a reasonable attorney's fee for the services rendered in the superior court, as well as upon appeal, and, as just stated, it was held that the attorney's fee was a proper element of damages.

It may be admitted that the cases of *Seattle Crockery Co. v. Haley,* 6 Wash. 302, 33 Pac. 650, 36 Am. St. 156, and *McGill v. W. P. Fuller & Co.,* 45 Wash. 615, 88 Pac. 1038, express the view that attorney's fees could be allowed as damages only in procuring the discharge of the writ prior to a trial upon the merits, and could not be allowed as damages for the trial upon the merits as the result of which the writ was discharged.

An examination of the writs of garnishment and the affidavits upon which they were based show that they were regular upon their face and comply with the pro-

visions of the garnishment statute. Rem. Rev. Stat., § 681.

It was necessary, therefore, for respondents, in order to secure the release of their funds, to try the cases upon their merits. The following excerpt from *Thropp v. Erb,* 255 N. Y. 75, 174 N. E. 67, 71 A. L. R. 1455, gives the proper reason for the rule.

"In the present case there would have been no 'reasonable chance of success' if a motion had been made to vacate the warrant. No contention can be seriously raised that this plaintiff could have rid himself of the warrant of attachment except by a trial on the merits. No futile motion to vacate was necessary to complete the chain of causation between the warrant of attachment and the expenses incurred in the successful defense.

"In each case the question of whether the defense on the merits was the result of the warrant of attachment must depend upon the circumstances of that case. Where that is established the expenses of the defense on the merits may be recovered in an action upon the statutory undertaking as damages sustained by reason of the attachment."

The general rule is expressed as follows:

"The majority view is that recovery of expenses for defending the attachment or garnishment suit on its merits is proper where it is necessary to defeat the main action in order to defeat the attachment." 5 Am. Jur. 215, Attachment and Garnishment, § 1016."

In view of the majority holding and our own decisions, we overrule the holding contained in *Seattle Crockery Co. v. Haley, supra,* and *McGill v. W. P. Fuller & Co., supra,* in so far as that holding applies to cases where it is necessary to try the main case upon its merits in order to secure the discharge of a writ of garnishment.

Appellants next urge that the amount of forty-five hundred dollars allowed as attorney's fees by the

trial court is excessive. Several attorneys expressed the opinion that the amount was unreasonable, while others were of the view that the allowance was entirely within reason in view of the services performed by Mr. Maloy. After considering the testimony relative to the amount of a reasonable attorney's fee, we are unable to say that the evidence preponderates against the finding made by the superior court. In fact, after reading the testimony relative to the amount of work done by Mr. Maloy and the result accomplished, we are firmly of the opinion that the trial court was correct in its allowance of the attorney's fee.

 Turning now to the question of the allowance, as damages, of expenses incurred incidental to the preparation of the action and upon the trial thereof, it should be noted that the "Ruth C" was lost in Alaskan waters, and that the trial occurred in Seattle. In the case, there were a number of important and difficult questions to be determined, one of which was whether the "Ruth C" was seaworthy. It was necessary, as the court found, in preparation of the defense of the former action, to employ a marine architect and bring a witness from Alaska who was on the "Ruth C" when she went down, as witnesses. The character of this testimony can best be set forth by making a somewhat extended quotation from the trial court's findings of fact as follows:

"The plaintiffs were compelled to expend the sum of $150.00 to Captain Peter McGilligan, as an expert witness, in preparation and for the trial of said suits in which the writs of garnishment were issued; that the employment of said Captain Peter McGilligan was necessary and reasonable, and the sum paid said Captain Peter McGilligan as such expert witness was reasonable. The plaintiffs were compelled to employ Captain W. J. Maloney as an expert witness, in preparation and for the trial of said suits in which the writs

of garnishment were issued; that such employment was necessary and reasonable, and that the sum of $150.00 paid said Captain W. J. Maloney was reasonable. The plaintiffs were compelled to employ one Carl J. Nordstrom, consulting naval architect, as an expert witness in the cases, in preparation and for the trial of said suits in which the writs of garnishment were issued; that said employment was necessary and reasonable, and that the sum of $35.00 paid Nordstrom as an expert witness in said trial was reasonable. That the plaintiffs were compelled to bring one George Bellamy, a member of the crew of the 'Ruth C' at the time she came into contact with the whirlpool and who was on deck at said time and who was an important witness, from Kodiak, Alaska, to Seattle for the trial of said action, and were compelled to agree to pay his expenses, including his lost wages during the time he was away from Jute Bay where he was working, until he returned, together with his fare from Alaska to Seattle and from Seattle to Alaska in returning; that the personal attendance of said George Bellamy at the trial of said case was necessary for the proper defense of the action in which the writs of garnishment were issued, and that the sum of $127.00 is a reasonable allowance for twenty (20) days of the time that he was absent from his work, as lost wages, and the sum of $69.50 from Alaska to Seattle and $69.50 from Seattle to Alaska was a necessary and reasonable expense of his transportation in coming to and going from Seattle; that the plaintiffs are entitled as reasonable expenses in connection with the testimony of George Bellamy in the sum of $268.68; that the plaintiffs reasonably expended the sum of $18.22 in the defense of said action in which the writs of garnishment were issued for telegrams to Bellamy at Kodiak and the Bureau of Navigation and Marine Inspection at Juneau, Alaska."

In 7 C. J. S. 373, § 179, it is said:

"Although there is authority to the contrary, it is generally held that the expenses incurred in defending the principal suit on the merits are items of actual damage recoverable in an action on the bond, especi-

ally where a defense on the merits is necessary to procure a dissolution of the attachment."

In the case of *Gregory v. U. S. Fidelity & Guaranty Co.,* 105 Kan. 648, 185 Pac. 35, the court approved, in an attachment proceeding, twelve hundred fifty dollars for attorney's fees, eight hundred dollars for expenses in procuring evidence to discharge the attachment, and forty dollars traveling expenses necessarily incurred in attending court.

In the case of *Moseley v. Fidelity & Deposit Co. of Maryland,* 33 Idaho 37, 189 Pac. 862, 25 A. L. R. 564, the court approved, in an attachment proceeding, damages for loss of time and traveling expenses in making two trips to Idaho from the city of Chicago to defend the action, as well as attorney's fees.

There are other cases to the same effect, but, inasmuch as the rule appears to be general, they will not be here assembled. The basis of the rule appears to be whether the expenses incurred were reasonably necessary for the preparation and conduct of the trial. We hold in the present case that the expenses incurred were reasonable and necessary, taking into consideration the character of the action and the questions involved.

The judgment will be affirmed.

ROBINSON, C. J., BEALS, MILLARD, STEINERT, BLAKE, JEFFERS, and DRIVER, JJ., concur.