714 P.2d 56

**VALLEY BANK, an Idaho Banking Corporation, Plaintiff-Respondent-Cross Appellant,**

v.

**John DALTON and Peggy Darlene Dalton, husband and wife, Defendants-Appellants-Cross Respondents.**

**No. 15821.**

Court of Appeals of Idaho.

Dec. 9, 1985.

Rehearing Denied Jan. 24, 1986.

Blair Grover (Grover & Walker), Rigby, for defendants-appellants-cross respondents.

Stephen A. Meikle, Idaho Falls, for plaintiff-respondent-cross appellant.

Before WALTERS, Acting C.J., and McFADDEN and HUNTLEY, Acting JJ., Special Panel.

WALTERS, Acting Chief Judge.

Valley Bank filed suit against John and Peggy Dalton to recover the amount of overdrafts in the Daltons' checking account. The bank also sought, and obtained, a prejudgment writ of attachment against two vehicles owned by the Daltons. The Daltons counterclaimed for damages, alleging that the prejudgment attachment was wrongful. Subsequently, the court granted a motion by the bank for summary judgment on its claim against the Daltons, but refused to allow recovery to the bank of its attorney fees and costs incurred. The court also granted summary judgment to the bank on the Daltons' counterclaim. Both parties appeal.[1]

---

1. Although the bank filed a notice of cross-appeal, its brief does not contain a statement of

The following issues are presented: did the Daltons timely appeal from the adverse determination by the court on their counterclaim; did the court err in granting summary judgment to the bank on the Daltons' counterclaim; is either party entitled to an award of attorney fees on this appeal. We hold the appeal was timely and that the attachment of the Daltons' vehicles was wrongful. We vacate the judgment against the Daltons on their counterclaim and remand for determination of damages for wrongful attachment. We award attorney fees, on appeal, to the Daltons.

The following course of events led to this appeal. The Daltons deposited two checks from a business associate, Albert J. Prevot, in their Valley Bank account. The Daltons then wrote checks on that account. Prevot's checks were subsequently dishonored, resulting in the Daltons' account being overdrawn by approximately $15,000. In the meantime, the bank had honored the Daltons' checks. The bank then sued the Daltons to recover a money judgment for the Daltons' overdrafts and sought a prejudgment attachment of two of the Daltons' vehicles. Upon receipt of the application for the writ of attachment together with a bank officer's affidavit in support of the application, the district judge conferred ex parte with the bank's attorney. The court then issued the writ and the vehicles were seized by the sheriff. Subsequently, in a hearing before the court, the Daltons requested that the writ of attachment be "quashed." However, the judge upheld the attachment, but without ruling on the Daltons' allegation that the complaint and affidavit in support of the attachment application were deficient and the writ had been wrongfully issued. The Daltons then moved the court to reconsider its order authorizing the attachment. Again, the judge refused to dissolve the writ. Later, the district judge granted summary judg-

ment to the bank on its claim for a money judgment, exonerated the bank's attachment bond, and denied relief to the Daltons on their counterclaim.

## I

We will address first whether the Daltons' appeal was timely filed. In this regard, the dates of certain occurrences are pertinent. After the bank's complaint had been filed and a temporary writ of attachment issued ex parte, a show cause hearing was held to determine whether the writ should be made permanent. On August 14, 1984, following a hearing on the order to show cause, the district court upheld the writ of attachment and made it permanent. The Daltons later moved the court to reconsider the issuance of the writ. The court refused their request, by memorandum decision and order dated September 25, 1984, and filed on October 15, 1984.

On November 5 the bank moved for summary judgment on its complaint and on the Daltons' counterclaim. The bank's motion was argued to the court on December 4, 1984 and, ruling from the bench, the district court determined that summary judgment should be granted in favor of the bank except on its claim for attorney fees and costs, which was taken under advisement. On December 5, 1984, the district judge signed a memorandum decision, denying recovery of attorney fees and granting summary judgment to the bank on the Daltons' counterclaim. The memorandum decision also recited that: "Summary judgment is granted [to the bank] on the negative balance created [by the overdraft]." The memorandum decision was filed on December 11, 1984. On the same day, December 11, the Daltons filed a notice of appeal "from the summary judgment entered in the above entitled action on the *11th* day of December, 1984." Thereafter, on Decem-

issues to be decided, I.A.R. 35, nor does it cite as error or seek review of any adverse ruling by the trial court. The bank's argument on appeal addresses only (1) whether Daltons' appeal was timely; (2) whether the writ of attachment was wrongfully issued; (3) whether the court erred in granting summary judgment to the bank on Daltons' counterclaim; and (4) whether the bank is entitled to attorney fees on appeal. We are thus presented with no issues on cross-appeal to be decided.

ber 21, 1984, the bank filed notice of cross-appeal "in reference to the appeal taken by [the Daltons] from the Order for Partial Summary Judgment and exonerate [sic] bond in the above entitled action submitted on the 5th day of December, 1984, and supposedly entered on December 11th, 1984." On January 4, 1985 the district judge signed and filed a document entitled "Order of Partial Summary Judgment and for Exoneration of Bond or Undertaking."[2] In that instrument the court declared:

[I]t is hereby ordered, adjudged and decreed as follows:

1. That the Memorandum Decision dated December 5, 1984, constitutes the Court's findings and facts and conclusions of law, regarding the above-mentioned motion for summary judgment.

2. That Valley Bank is granted Summary Judgment against defendant on the Complaint as well as the Counterclaim.

3. That Valley Bank's Bond or Undertaking is hereby exonerated.

4. That Valley Bank's request for attorney's fees and costs are denied.

5. That this is a final order as to all matters pending before the Court.

The Daltons then filed an amended notice of appeal on January 10, 1985, stating they were appealing from the Memorandum Decision of December 5, 1984, the Order of Partial Summary Judgment entered on December 11, 1984 and from the Order of Partial Summary Judgment filed January 4, 1985. On January 17, 1985, the bank filed an amended notice of cross-appeal from the same decision and order referred to in the Daltons' amended notice of appeal. For some inexplicable reason, the district court signed another Order for Partial Summary Judgment on January 31, 1985, which was identical to the Order entered on January 4, 1985. This latter order was filed on February 1, 1985.

To be timely, a notice of appeal must be filed within forty-two days "from the date

evidenced by the filing stamp of the clerk of the [district] court on any judgment, order or decree of the district court appealable as a matter of right in any civil or criminal action." I.A.R. 14(a). The bank argues that the Daltons' notice of appeal was not timely because it was not filed within forty-two days from August 14, 1984 when the district court first upheld the issuance of the writ of attachment or within forty-two days from the order dated September 25 and filed October 15 in which the court refused to quash the writ upon the Daltons' motion to reconsider the August 14 ruling. We disagree with the bank's approach.

■■■ The August 14 and October 15 orders were non-appealable, interlocutory rulings or orders. See I.A.R. 11(a) as amended March 30, 1984. In civil actions, except for certain designated orders not applicable here, interlocutory rulings are not appealable unless certified for appeal as partial judgments. Id. Otherwise, only final judgments are appealable. Id. Here, for the purpose of appeal, the final judgment adjudicating all outstanding issues between the parties was filed on January 4, 1985. See cases cited supra, note 2. The Daltons' notice of appeal on December 11, 1984 was premature because no judgment had yet been entered. However, the appeal became effective on January 4, 1985, when the final judgment was filed. See I.A.R. 17(e)(2). We conclude that the Daltons' appeal was timely.

## II

We next address the entry of judgment in favor of the bank against the Daltons on their counterclaim alleging wrongful attachment. This issue requires review of the circumstances under which the writ of attachment was entered in this case.

The procedure for obtaining a prejudgment writ of attachment is governed by I.C. §§ 8–502 and 8–503. A party seeking

---

2. Despite its style as an "Order of Partial Summary Judgment," we deem this instrument to be a final judgment. Whether an instrument is a judgment turns upon its content and substance,

not upon its title. *Idah-Best, Inc. v. First Security Bank of Idaho,* 99 Idaho 517, 584 P.2d 1242 (1978); *M & H Rentals, Inc. v. Sales,* 108 Idaho 567, 700 P.2d 970 (Ct.App.1985).

the writ must submit to the court an application and an affidavit supporting the application. If the application is granted, an undertaking also must be filed. In respect to the application for the writ, subsection (c) of § 8–502 provides:

(c) Upon examination of the complaint and affidavit and such other evidence or testimony as the judge may, thereupon, require, a writ of attachment may be issued prior to hearing, if probable cause appears that any of the following exist:

. . . . .

(3) By reason of specific facts shown, the property specifically sought to be attached is ... in immediate danger of destruction, serious harm, concealment, or removal from this state, or of sale to an innocent purchaser, and the holder of such property threatens to destroy, harm, conceal, remove it from the state, or sell it to an innocent purchaser....

Several requirements in § 8–502 are noteworthy in the context of this case. First, the judge must examine the complaint and the affidavit. Second, the judge may require additional evidence or testimony other than that in the affidavit. The judge may then issue a prehearing writ of attachment if: (1) the property is in "immediate danger of destruction, serious harm, concealment, or removal from this state, or of sale to an innocent purchaser," *and* (2) the holder of the property threatens to do one of the above with or to the property. These are procedural safeguards to insure that persons are not deprived of their property without due process. *See Schiffahrtsgesellschaft v. A. Bottacchi*, 732 F.2d 1543 (11th Cir.1984) (discussing history of prehearing attachments and due process requirements).

In the order filed October 15, 1984, refusing to dissolve the writ, the judge acknowledged that he had "failed to review carefully the balance of the affidavit but determined, based on the in-chambers conversation with counsel for the bank, that a pre-hearing attachment would be allowed." The statute requires that the judge should have first examined the affidavit supporting the application for the writ of attachment to determine if there was probable cause for issuing the writ.

The purpose of the affidavit is to show that there is indeed probable cause to believe that something detrimental might happen to the property which is the object of the attachment process. The introductory language of § 8–502(c)(3) requires that the danger of damage to or impairment of the property be established by "specific facts"—mere conclusions that some danger exists are inadequate. The bank officer's affidavit shows it to be conclusory in nature and contrary to the statute. The affidavit does not indicate the property was in immediate danger of removal, destruction, sale, or concealment. Nor does the affidavit give any specific facts indicating that the Daltons were threatening to remove, destroy, sell, or conceal the vehicles. In fact, the record shows that the bank's fears about the accessibility and safety of the vehicles stemmed from the possible influence or control of Albert Prevot, the maker of the checks deposited by the Daltons. The affidavit also fails to show that Prevot had any connection to the vehicles or had any control over them. The affidavit does little except indicate that Prevot's check was not covered by sufficient funds in his account and that that fact ultimately resulted in the Daltons' account being overdrawn.

■ The bank officer's affidavit also incorporates by reference the facts alleged in the complaint. The complaint simply asserts that the vehicles were "subject to the threat of imminent withdrawal and will be diminished or encumbered prior to any notice of hearing." None of these allegations, even if true, state a basis for issuance of a writ of attachment to seize the Daltons' vehicles. The fact that the Daltons had deposited checks which were drawn on an account with insufficient funds and then failed to remedy the situation does not indicate danger to the vehicles. Moreover, the affidavit fails to indicate with specific facts any threat by the Daltons or by Prevot to do any of the

statutorily prohibited acts to or with the vehicles. In summary, the affidavit alone falls short of establishing probable cause that the vehicles were "in immediate danger of destruction, serious harm, concealment, or removal from this state, or of sale to an innocent purchaser." I.C. § 8–502(c)(3). Therefore, the affidavit alone would not justify attachment of the vehicles.

■■■ We now turn to the matter of the in-chambers ex parte meeting with the bank's counsel to see if it might remedy the affidavit's deficiencies. The statute provides that the judge may rely not only on the affidavit but also upon "such other evidence or testimony as the judge may ... require." I.C. § 8–502(c). As noted, here the district judge based his decision to permit attachment almost solely on the in-chambers meeting. Unfortunately, the judge found it unnecessary to record the additional information divulged in the ex parte meeting. Since the affidavit did not establish probable cause and the in-chambers conversation was unrecorded, the record correspondingly reflects nothing from which we can determine that the statutory requirements were met at the time the writ was issued.[3] We are required to examine only the record before us and will not consider matters not in the record. *Schneider v. Curry*, 106 Idaho 264, 678 P.2d 56 (Ct.App.1984). We conclude from the record that the writ should not have been issued, and the attachment was therefore wrongful. It follows that summary judgment should not have been granted to the bank on the Daltons' counterclaim.

Summary judgment should not be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is genuine issue as to any material fact." I.R.C.P. 56(c). The district judge, by granting summary judgment and upholding the attachment, in effect precluded the Daltons from proving whether any damages arose from the attachment. The Daltons' pleadings establish otherwise. We conclude that the portion of the summary judgment upholding the attachment and exonerating the bank's attachment bond must be vacated and the case remanded for a determination of damages resulting from the wrongful attachment.

### III

■■■ Finally, we turn to the question of attorney fees on appeal. The bank has not prevailed, so it is not entitled to such fees. The Daltons, however, are entitled to an award of fees. Our Supreme Court has ruled that, in actions for wrongful attachment, attorney fees and costs incurred in challenging a wrongful attachment are recoverable. *Hessing v. Drake*, 90 Idaho 67, 408 P.2d 180 (1965); *Moseley v. Fidelity etc. Co. of Maryland*, 33 Idaho 37, 189 P. 862 (1920). We have held that the attachment was wrongful since there was no basis to find probable cause that the vehicles were in any danger of removal, destruction, sale, or concealment. We therefore award fees, on appeal, to the Daltons. Further, on remand the district judge is also directed to make a finding and award to the Daltons those costs and attorney fees incurred by the Daltons in the district court on their challenge to the wrongful attachment, but not for defending the bank's main action to collect on the overdrawn account. *Id.*

The judgment against the Daltons on their counterclaim is vacated and the exoneration of the bank's attachment bond is reversed. The case is remanded for findings as to the Daltons' damages incurred, if any, as a result of the wrongful attachment. Costs and attorney fees on appeal, to the Daltons.

HUNTLEY and McFADDEN, Acting JJ., concur.

---

**3.** In support of the bank's subsequent motion for summary judgment, the bank's attorney filed an affidavit allegedly setting forth the substance of information he had supplied to the court in the in-chambers meeting. We do not deem this affidavit to be an official record of that conference.